In the Matter of Forest D. RASMUSSEN and Blanche A. Rasmussen, John Rasmussen, Nancy Rasmussen and Samuel Rasmussen, Debtors.

Erlene W. KRIGEL, trustee in bankruptcy, Petitioner,

v.

INTERNAL REVENUE SERVICE, Respondent.

Nos. 83–01145–3, 83–01142–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

May 10, 1988.

Order Approving Stipulation Between Trustee and the Internal Revenue Service Jan. 12, 1989.

See also, Bkrtcy., 54 B.R. 965.

Erlene W. Krigel, Krigel & Krigel, P.C., Kansas City, Mo., for petitioner.

Arthur B. Federman, Kansas City, Mo., for debtors.

David DeTar Newbert, Asst. U.S. Atty., Alan M. Jacobson, Sp. Asst. U.S. Atty., Kansas City, Mo., Edward G. O'Dowd, Dept. of Treasury, Ralph F. Shilling, Dist. Director, Chief Special Procedures Sect., St. Louis, Mo., for respondent.

ORDER DIRECTING RESPONDENT FURTHER TO SHOW CAUSE IN WRITING WITHIN 15 DAYS WHY TRANSFER OF PROPERTY FROM DEBTORS TO BANKRUPTCY ESTATE SHOULD NOT BE REGARDED AS AN "EXCHANGE" WITHIN THE MEANING OF SECTION 1398(b)(1), TITLE 26, UNITED STATES CODE, AND DIRECTING PETITIONER TO SHOW CAUSE WHY SHE SHOULD NOT MOVE TO DISMISS THE WITHIN CHAPTER 7 PROCEEDINGS

DENNIS J. STEWART, Chief Judge.

This court formerly issued its written order directing the respondent Internal Revenue Service to show cause why its $23,784.00 income tax assessment, made against the petitioner trustee in bankruptcy on December 28, 1987, should not be held to be without any basis in law.

▪ The Internal Revenue Service has responded, demonstrating to the court that its assertion that the bankruptcy estate has realized a taxable gain is based upon the provisions of § 1398(f)(1), Title 26, United States Code, which, for income tax purposes, assign the bankruptcy estate the same basis for its property as it had in the hands of the debtor *unless the property was transferred to the estate by sale or exchange.*[1] "Exchange" is standardly defined by decisional authority as a transfer for any form of tangible property or intangible value.[2] The definition may be suffi-

---

1. "A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset." Section 1398(f)(1), Title 26, United States Code.

2. See, e.g., *Burger–Phillips Co. v. Commissioner of Internal Revenue,* 126 F.2d 934, 936 (5th Cir.1942), in which it was held that "an exchange is a transfer of property for property or some value other than money" and that it included the transfer of a property interest for the voiding of a debt.

ciently general and expansive to require a holding that, when debtors transfer property to their bankruptcy estate, receiving in return a discharge of the debts which they owe creditors in amounts which ordinarily equal or exceed the value of the property transferred, it is a transfer by "exchange" —the discharge of a pre-existing debt for the transfer of the property.[3]

Such an interpretation of the statute, furthermore, would appear to be more in consonance with the objectives of bankruptcy estate administration and principles of reality and fairness than the interpretation currently being indulged by the respondent Internal Revenue Service. If that definition is to become the rule of decision in the courts which are finally to decide the question, then it will be the debtor who gains from the transfer at the expense of his creditors, not only a discharge of the indebtedness owed to them, but also payment of the debtor's nondischargeable income tax liabilities at the expense of the same creditors. In reality, any capital gain realized on property up to the date of bankruptcy is the debtor's gain. It is realized while the debtor has use and enjoyment of the property and this is recognized by this court's proposed interpretation of section 1398(f)(1), *supra*, which would grant the taxing authority a seventh-priority claim against the bankruptcy estate for such taxes in accordance with the statutes which govern priority of distribution of assets in bankruptcy.[4] But, if the respondent's view of § 1398(c)(1), *supra*, is sustained, the Government's income tax claim will be elevated to a first superpriority in almost every imaginable case, ousting even the trustees and the trustee's attorney's whose efforts have been essential and instrumental in collecting the property on which the income tax is being exacted. A literal reading of § 1398(b)(1) would even place personal responsibility on a bankruptcy trustee for paying any tax which, as in this case, may exceed the amount of monies on hand in the estate.[5] Thus, in cases in which it would be possible that the debtor's basis in estate property is likely to be considerably lower than its present value—as seems would be true in the vast majority of cases—trustees and their attorneys might be well advised, under the respondent's interpretation of the statute, to avoid the collection of all but the most exceptional of estates. For, not only would such collection not subserve the primary goal of bankruptcy administration, which is *pro rata* distribution to the general unsecured creditors, but it would also mulct the trustee and trustee's attorneys of their lawful fees and expenses and perhaps even make the trustee individually liable for some of the debtor's otherwise nondischargeable tax liability. This court finds it difficult to believe that Congress would have intended such a result.

Nor, on the authority of *Nicholas v. United States*, 384 U.S. 678, 693, 86 S.Ct. 1674, 1685, 16 L.Ed.2d 853 (1966), does this court believe that a trustee can be liable for penalties or interest for failure to file tax returns reporting tax obligations incurred by the debtor prior to bankruptcy. In that case, the Supreme Court held that "[t]he crucial fact ... so far as the obligation to file tax returns is concerned, is that the taxes were in fact incurred during proceedings under the Bankruptcy Act. Thus, nothing said in this opinion may be taken as imposing any obligation upon a trustee in bankruptcy to file returns for taxes incurred before the initiation of proceedings under the Act."

## II

The trustee, however, in a voluminous response which she has filed to the respon-

---

3. See note 2, *supra*.

4. See section 507(a)(7) of the Bankruptcy Code, which grants seventh priority to taxes "on or measured by income or gross receipts" for the three years next preceding bankruptcy. Significantly, the priority would be lower than administrative expenses allowed under section 503(b) of the Bankruptcy Code.

5. "Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income *and shall be paid by the trustee.*" Section 1398(c)(1), Title 26, United States Code. (Emphasis added.)

dent's response to the show cause order, appears to accede to the basic proposition that the estate is liable for such capital gains, and must file tax returns and pay taxes on them. She places her assignments of error in the respondent's condition on wholly other grounds, grounds which threaten to entangle the estate and the Internal Revenue Service in litigation which can continue all out of proportion to the gain which may be realized for the estate or the trustee and the trustee's attorneys.[6] Already, the volume of her response signifies an effort such as would nearly wholly consume an estate of this size and prevent its distribution to the general creditors, even if it should be wrested away from the Internal Revenue Service. Under such circumstances, the attention of the trustee should be focussed upon § 1398(b)(1), which provides that:

"(b) Exceptions where case is dismissed, etc.—(1) Section does not apply where case is dismissed.—This section shall not apply if the case under chapter 7 or 11 of title 11 of the United States Code is dismissed."

Thus, the trustee may dismiss the case, restore the assets to the debtors and let them settle the tax consequences with the Internal Revenue Service.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that respondent further show cause in writing within 15 days of the date of filing of this order why transfer of property from debtors to the bankruptcy estate should not be regarded as "exchanges" of property within the meaning of section 1398(b)(1), Title 26, United States Code. It is further

ORDERED that the trustee in bankruptcy show cause in writing within the same 15 days why she should not move to dismiss the within chapter 7 proceedings.

---

**6.** The respondent is nevertheless requested, in its response to this order, to reply to the contentions made on the merits by the trustee, as well as to the considerations stated in the text of this memorandum.

**1.** Section 507(a)(7) of the Bankruptcy Code grants a seventh priority to "allowed unsecured

## ORDER APPROVING STIPULATION BETWEEN TRUSTEE AND THE INTERNAL REVENUE SERVICE

In these chapter 7 cases, the trustee and the Internal Revenue Service have entered into a stipulation which has not yet been approved by the court. The settlement which was entered into was filed with the court on June 20, 1988, and was to the following effect:

"The Petitioner Erlene W. Krigel, trustee in bankruptcy, and the Respondent, Internal Revenue Service, by and through their respective attorneys, stipulate and agree that there are no federal income taxes due from the bankruptcy estate of Forrest D. and Blanche A. Rasmussen, Case No. 83–01145–3, and Tax Identification Number 43–1433959, for the tax year ending 12/31/86.

"Further, the parties stipulate and agree that the federal income tax return filed by the trustee for the tax year ending 12/31/86 is accepted by the Internal Revenue Service as filed."

The stipulation was entered into by the parties after this court had entered its orders of March 22, 1988, and May 10, 1988, directing the Internal Revenue Service to show cause why its claim based on a capital gain should not, in substance, be relegated to the seventh priority claim which is provided by § 507(a)(7) of the Bankruptcy Code.[1] For that would have been the result of treatment of the tax liability as one of the debtors rather than one of the estate, as the following considerations of the show cause orders made compelling:

"Such an interpretation of the statute, furthermore, would appear to be more in consonance with the objectives of bankruptcy estate administration and principles of reality and fairness than the interpretation currently being indulged by the respondent Internal Revenue Service.

claims of governmental units, only to the extent that such claims are for," *inter alia*, "a tax on or measured by income or gross receipts ... not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case."

If that definition is to become the rule of decision in the courts which are finally to decide the question, then it will be the debtor who gains from the transfer at the expense of his creditors, not only a discharge of the indebtedness owed to them, but also payment of the debtor's nondischargeable income tax liabilities at the expense of the same creditors. In reality, any capital gain realized on property up to the date of bankruptcy is the debtor's gain. It is realized while the debtor has use and enjoyment of the property and this is recognized by this court's proposed interpretation of section 1398(f)(1), *supra,* which would grant the taxing authority a seventh-priority claim against the bankruptcy estate for such taxes in accordance with the statutes which govern priority of distribution of assets in bankruptcy. But, if the respondent's view of § 1398(c)(1), *supra,* is sustained, the Government's income tax claim will be elevated to a first superpriority in almost every imaginable case, ousting even the trustees and the trustee's attorneys whose efforts have been essential and instrumental in collecting the property on which the income tax is being exacted. A literal reading of § 1398(b)(1) would even place personal responsibility on a bankruptcy trustee for paying any tax which, as in this case, may exceed the amount of monies on hand in the estate. Thus, in cases in which it would be possible that the debtor's basis in estate property is likely to be considerably lower than its present value—as seems would be true in the vast majority of cases—trustees and their attorneys might be well advised, under the respondent's interpretation of the statute, to avoid the collection of all but the most exceptional of estates. For, not only would such collection not subserve the primary goal of bankruptcy administration, which is *pro rata* distribution to the general unsecured creditors, but it would also mulct the trustee and trustee's attorneys of their lawful fees and expenses and perhaps even make the trustee individually liable for some of the debtor's otherwise nondischargeable tax liability. This court finds it difficult to believe that Congress would have intended such a result."

Now, the Internal Revenue Service proposes to settle this controversy by nullifying the tax liability altogether, purporting to rely upon the trustee's claims of setoff by reason of depreciation and the like.[2] This court will approve the compromise and settlement, although placed on a wholly different ground than the principles stated in the court's prior show cause orders.

■ Yet, the court does not encourage trustees in the future administration of middle-size and small bankruptcy cases to reach settlement with the taxing authorities on such a basis. For it means that such an administrative expense has to be occasioned for accounting and legal services that collection of the estate results, as it has in this case, in little benefit to the general creditors.[3]

The rule which has been adumbrated by the prior show cause orders of the court has been criticized on the ground that it will result in the incurring by the debtor, as of the date of the filing of the bankruptcy petition, of a nondischargeable tax obligation in the amount of the capital gain. But such a result is preferable to the bankruptcy estate's having to bear the sole tax burden of the capital gain. For, according to the analysis set forth in this court's prior orders, it is the debtor who gains the benefit of the sale or exchange of that capital gain, as of the date of bankruptcy, in return for the discharge of the debts owed to creditors.[4] It is wholly unfair to creditors, whose interests have been compromised thereby, additionally to bear the tax liability to the exclusion of any liability for the debtors.

As it is, however, the liability will be shared, in most imaginable circumstances, between the creditors and the debtor. For at least a substantial portion of the debt-

---

**2.** As observed above, the settlement is based upon the "federal income tax return filed by the trustee for the tax year ending 12/31/86."

**3.** See note 5, *infra.*

**4.** See the consideration stated above in the text of this memorandum.

ors' nondischargeable tax liability will be paid out of the bankruptcy estate by reason of the debtor's prepetition tax liabilities having the seventh priority in estate distribution, as mentioned above. In this case, for instance, if the tax claim had been allowed, fully 83% thereof would have been paid out of the estate.[5] And, as mentioned above, it is wholly consonant with the principles of fairness that the debtor should pay the other 17% of that liability.[6] This result is especially appropriate under the expedited procedures for distributing monies of the estate and closing cases which have been in effect in this district since 1986. These procedures remain in effect as of this date and they ensure that distribution will take place at the earliest possible time. No longer does the situation exist which is reflected in *Matter of Benson*, 88 B.R. 210 (W.D.Mo.1988), and *Matter of Shurback*. In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code No. 79–00815–BW–1 (Bkrtcy.W.D.Mo. Oct. 21, 1982), whereby months and even years passed after the completion of estate administration before the bankruptcy clerk's office could complete a computation of dividends and the pertinent result was that great sums of interest accrued before a payment from the estate could be made against the nondischargeable obligation, which otherwise, without the additional interest chargeable because of the clerk's delay, would have been fully paid from the estate. It is therefore hereby

ORDERED that the stipulation between the trustee and the Internal Revenue Service be, and it is hereby, approved.

---

5. It is made clear by the following computations that the larger share of the tax liability would still be borne by the estate. The following was the trustee's proposed distribution of priority claims without the Internal Revenue Service claims for taxes:

Cash on hand: $25,126.52

| Creditor | Amount of claim | Percent paid | Basis |
|---|---|---|---|
| Krigel & Krigel, P.C. | $1,173.00 | 100% | Trustee atty fee |
| Coopers & Lybrand | 1,280.00 | 100% | Chap. 7 accountant |
| Baker Seeds | 464.39 | 100% | Chap. 11 administrative expense |
| Grundy County Collector | 3,681.39 | 100% | Chap. 11 personal property tax |
| Kossuth Hospital | 1,475.00 | 100% | Chap. 11 administrative expense |
| Arthur Federman | 3,890.05 | 100% | Debtor's atty fees (Chap. 11) |

The following is the distribution if the IRS claim is included. The IRS penalty is not included, since the distribution assumes that the estate agreed with the IRS as to tax liability (eliminating the substantial understatement penalty) and timely filed its return (eliminating the untimely filing penalty).

Cash on hand: $25,126.52

| Claimant | Amount of claim | Percent paid | Amount paid | Basis for inclusion in 507(a)(1) |
|---|---|---|---|---|
| Krigel & Krigel | $ 1,173.00 | 83.98358% | $ 985.13 | 503(b)(2) |
| Coopers & Lybrand | 1,280.00 | 83.98358% | 1,074.99 | 503(b)(4) |
| Internal Revenue Service | 23,784.00 | 83.98358% | 19,974.64 | 503(b)(1)(B)(i) |
| Grundy County Collector | 3,681.39 | 83.98358% | 3,091.76 | 503(b)(1)(B)(i) |

Amount remaining for other classes of priority claimants: $0.00

---

6. It is interesting to note that, if all the tax for capital gains for which the estate was initially assessed were exacted, there would be little or nothing remaining to be distributed to creditors.