A. Joyce **PAYNE**

v.

**UNITED STATES of America.**

**UNITED STATES of America**

v.

A. Joyce **PAYNE.**

No. 89–110.

United States District Court, D. Vermont.

Nov. 21, 1991.

Robert A. Gensburg, Gensburg Axelrod & Adler, St. Johnsbury, Vt., for plaintiff.

Scott Harris, Tax Div., U.S. Dept. of Justice and Christopher B. Baril, Asst. U.S. Atty., Rutland, Vt., for defendant.

COFFRIN, Senior District Judge.

In 1986, the Internal Revenue Service levied on Payne's bank accounts in partial satisfaction of unpaid 1982 federal income taxes. Payne commenced this action to recover the seized funds, and the Internal Revenue Service counterclaimed to reduce the assessment to judgment and moved for summary judgment. We find Payne's 1982 income was not exempt from federal income taxation and grant the government's summary judgment motion.

## BACKGROUND

In 1982, taxpayer Payne's late husband earned $75,780.00 while working for the Panama Canal Commission ("PCC") in the Republic of Panama. The Paynes reported these wages as gross income on their 1982 federal tax return but excluded the entire amount from their taxable income, claiming the Panama Canal Treaty of 1977 exempted it from taxation. The Internal Revenue Service ("IRS") processed the return and issued a refund.

On March 10, 1986, the IRS made a $106,672.88 assessment against the Paynes for unpaid 1981 and 1982 taxes. Of this amount, $24,457.00 in back taxes and $9,477.90 in interest related to the 1982 tax year. When Payne did not pay the assessment, the IRS, on February 19, 1987, levied on Payne's bank account and received $32,-630.49 which partially satisfied the total Payne allegedly owed.

In 1987, Payne brought suit in this court to recover the funds. She maintained the wages her husband had earned with the PCC were tax-exempt and also attacked the procedure the IRS had used to levy on her bank accounts for the 1981 taxes. The IRS conceded it had acted improperly with respect to the 1981 taxes and we granted summary judgment in Payne's favor on that portion of her claim. Since we based our decision on the IRS' failure to follow proper procedure, we did not, at that time, resolve the question of whether Mr. Payne's PCC wages were exempt from taxation. Later, we dismissed Payne's 1982 tax year claim without prejudice because she had not initially sought a refund from the IRS, as required.

Having exhausted her administrative remedies, Payne filed this action in April 1989. She maintains her late husband's 1982 wages were exempt from federal income taxation and seeks a refund of the levied funds, plus interest. The United States counterclaimed to reduce the assessment to judgment and moved for summary judgment. This summary judgment motion is now before the court.

## DISCUSSION

### I. *Jurisdiction*

This is a civil action against the United States for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected. We have original jurisdiction over such matters under 28 U.S.C. Section 1346(a)(1).

### II. *Issues*

Since 1987, when Payne first brought suit in this court, she has raised three different arguments to support her claim that she is not liable for any taxes on her husband's 1982 wages. First, she argued the Panama Canal Treaty of 1977 exempted the earnings from federal income taxes. Second, she argued she did not sign the

1982 federal income tax return and is therefore not liable for taxes due, if any. Finally, she argued 26 U.S.C. Section 911 exempted her husband's wages from federal income taxes.

■ Following the Supreme Court's decision in *O'Connor v. United States*, 479 U.S. 27, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986), it is clear the Panama Canal Treaty does not exempt from federal income taxation wages paid to PCC employees who are United States citizens. At oral argument in this matter Payne conceded the applicability of *O'Connor* to the facts of her case. In her papers, Payne has also admitted she signed the joint 1982 return and is therefore liable for any taxes due. Plaintiff's Memorandum of Law in Opposition to Government's Motion for Summary Judgment at 1. Thus, Payne's sole remaining argument is that 26 U.S.C. Section 911 exempted Mr. Payne's 1982 wages from federal income taxation.

### III. *Standard of Review*

The United States, as the moving party, is entitled to summary judgment if no genuine issues of material fact exist and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States has the burden of demonstrating the absence of a material, factual dispute and we, in determining whether the United States has met this burden, must draw all reasonable inferences and resolve all ambiguities in Payne's favor. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). However, we will enter judgment against Payne if she fails to set forth sufficient facts to establish she is entitled to an exemption. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### IV. *Section 911 Claim*

■ Section 911[1] permits United States citizens who are bona fide residents

---

1. Section 911 reads in pertinent part:
   **§ 911 Citizens or residents of the United States living abroad**
   **(a) Exclusion from gross income.**—At the election of a qualified individual ... there

shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—
   (1) the foreign earned income of such individual....

of a foreign country to elect to exclude from federal income taxation that portion of their income they earn abroad. This exemption is subject to several exceptions and conditions, the most significant of which, for purposes of this matter, makes it inapplicable to wages paid by the United States or an agency thereof to an employee of the United States or an agency thereof. 26 U.S.C. § 911(b)(1)(B)(ii). Therefore, if we determine the PCC is a United States agency for purposes of Section 911 then Mr. Payne's wages were not exempt from taxation, and we will grant the United States' motion for summary judgment.

The United States argues the Supreme Court's decision in *O'Connor*, 479 U.S. 27, 107 S.Ct. 347, forecloses Payne from bringing her Section 911 claim.[2] The United States reasons that in interpreting the Panama Canal Treaty so as to hold PCC wages subject to federal income taxation, the *O'Connor* court impliedly swept aside all other arguments in favor of exempting PCC wages, whether analyzed in the opinion or not.

■ A question not raised by counsel or discussed in the opinion of the court has not been decided merely because it existed in the record and might have been raised and considered. *United States v. Mitchell*, 271 U.S. 9, 14, 46 S.Ct. 418, 419–20, 70 L.Ed. 799 (1926); *Gardella v. Chandler*, 172 F.2d 402, 411 (2d Cir.1949). In *O'Connor*, the Supreme Court focused solely on 26 U.S.C. Section 894, which involves the

interaction of the Internal Revenue Code with government treaty obligations. The Court did not analyze the applicability of Section 911, even though it would have been dispositive of the case had the Court adopted the interpretation favored by Ms. Payne.[3] Therefore, Payne remains free to pursue her Section 911 claim.

As we stated earlier, if we find the PCC is an agency of the United States for purposes of Section 911 we need to go no further and will grant the United State's summary judgment motion. The question of whether the PCC is an agency of the United States is a question of federal law to be decided by the court. *See Standard Oil Co. v. Johnson*, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942). We have a sufficient understanding of the relevant standards and the PCC's operations to make this determination without taking further evidence.

Although the term is not defined, there is little question the PCC is an agency of the United States. The legislation establishing the PCC identifies the body as an agency in the executive branch of the United States government. 22 U.S.C. § 3611. The PCC is at least partially protected from suit by the doctrine of sovereign immunity and many claimants are restricted to administrative remedies. *See McClain v. Panama Canal Com.*, 834 F.2d 452 (5th Cir.1987); *Golden Panagia S.S. Inc. v. Panama Canal Com.*, 791 F.2d 1191 (5th Cir.1986). Before changing the toll it charges for

---

**(b) Foreign earned income.—**
   **(1) Definition.**—For purposes of this section—
   **(A) In general.**—The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual. . . .
   **(B) Certain amounts not included in foreign earned income.**—The foreign earned income for an individual shall not include amounts—. . .
   (ii) paid by the United States or an agency thereof to an employee of the United States of an agency thereof. . . .
26 U.S.C. § 911 (1982).

2. Since Ms. Payne was not a party to either *O'Connor* or its companion cases the United

States cannot assert that those judgments are conclusive against her in this court. *American Triticale Inc. v. Nytco Services, Inc.*, 664 F.2d 1136 (9th Cir.1981).

3. Neither *O'Connor*, 479 U.S. 27, 107 S.Ct. 347 nor its companion case, *United States v. Harris*, 479 U.S. 957, 107 S.Ct. 450, 93 L.Ed.2d 398 (1986), mentions Section 911. Nor do the decisions at the court of appeals or trial levels. *See Coplin v. United States*, 761 F.2d 688 (Fed.Cir. 1985); *Coplin v. United States*, 6 Cl.Ct. 115 (1984) and *Harris v. United States*, 768 F.2d 1240 (11th Cir.1985); *Harris v. United States*, 585 F.Supp. 862 (S.D.Ga.1984). In these cases the taxpayers' sole arguments for exempting their PCC wages from federal income taxes was the Treaty of 1977.

passage through the Canal the PCC is required to provide notice in the Federal Register and an opportunity for comment. 22 U.S.C. § 3794. Other courts have had little trouble categorizing the PCC as a federal agency. For instance, the Tax Court, in *McCain v. Commissioner*, 81 T.C. 918 (1983), faced the exact issue of whether the PCC is an agency for purposes of Section 911 and concluded it is. In *O'Connor* itself, Justice Scalia referred to the PCC as a "United States Government agency." *O'Connor*, 479 U.S. at 28, 107 S.Ct. at 349.

Although it seems clear that the PCC is an agency of the United States and that the Section 911(b)(1)(B)(ii) exclusion applies to all such agencies, Payne argues that not all agencies are agencies for purposes of Section 911 and that not all compensation paid by such agencies is paid by an agency of the United States.

■ As a general rule, we will not imply an exemption, but instead, will require the taxpayer to prove it unambiguously. *United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988). In determining the meaning of agency of the United States for purposes of Section 911(b)(1)(B)(ii), this rule of strict construction means we must interpret the word "agency" broadly. *Groves v. United States*, 533 F.2d 1376, 1383 (5th Cir.1976), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976).

■ Most courts faced with the issue of whether an agency's wages are exempt from federal income taxation have looked to the degree of control the government exercises over the entity. *See Kalinski v. Commissioner*, 528 F.2d 969 (1st Cir.1976). The power to initiate and to terminate, the effectuation of government purposes paramount over those of organizers and members, the exclusion of private profit, and the limitation of membership to govern-

ment connected persons all serve to identify an agency. *Id.* at 973 (quoting *Morse v. United States*, 443 F.2d 1185, 1188, 195 Ct.Cl. 1 (1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972)).

The United States has almost complete control over the activities of the PCC. The PCC is supervised by a board composed of nine members, a majority of which must be United States nationals. 22 U.S.C. § 3612(a). The President of the United States has the power to appoint members of the PCC's board and in addition, the power to remove them, regardless of their nationality. 22 U.S.C. § 3612(b). A quorum for the transaction of PCC business consists of a majority of board members of which a majority of those present are United States nationals. Members of the board who are United States nationals are required to cast their votes in the manner directed by the Secretary of Defense. 22 U.S.C. § 3612(a). Thus, the Secretary of Defense controls the outcome of any vote of the board, indicating the PCC is an agency of the United States.

The PCC meets another element of the control test if it effectuates government purposes as opposed to those of its organizers and members.[4] The PCC is not a commercial venture; the operation of the Canal is a governmental exercise of the power of Congress to regulate commerce, rather than a proprietary or business activity of the government. *McGehee v. Panama Canal Commission*, 872 F.2d 1213, 1218 (5th Cir.1989) (citing *Rogers v. Graves*, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306 (1937).

The signing of the Panama Canal Treaty of 1977 and the replacement of the Panama Canal Company with the Panama Canal Commission served to further emphasize the governmental nature of the Canal's operation as opposed to its commercial aspects.[5] While the Treaty and accompany-

---

**4.** Some courts emphasize this factor to determine whether an entity is an agency of the United States. *See Groves v. United States*, 533 F.2d at 1383–84.

**5.** Payne argues that the fact the 1977 Treaty transferred sovereignty over the Canal Zone to the Republic of Panama with the result that the

PCC now operates within an area outside United States sovereignty indicates the PCC is not a United States agency. However, we believe it is the function of the entity in question, not the area in which it operates, that lies at the heart of the inquiry into whether it is a United States agency. *Cf. Groves*, 533 F.2d at 1384 (in refer-

ing legislation vested the PCC with the power to perform a range of duties in the exercise of the rights of the United States with respect to management, operation, and maintenance of the Canal, they stripped the PCC of the power to perform many of the commercial activities previously performed by the Panama Canal Company. The Treaty spun these collateral revenue producing businesses off to the Republic of Panama, leaving the operation of the Canal as the sole remaining mission of the PCC. *Id.* at 1218 (citing *Hearings on HR 111 before Subcomm. on Merchant Marine and Fisheries*, 96th Cong., 1st Sess. 96–1 (1979) (Statement of Rep. Murphy). Thus, an analysis of the PCC under the governmental function test indicates it is an agency of the United States.

The PCC meets another element of the control test if it generates only governmental revenue as opposed to private profits. The PCC is required to deposit all its receipts in the Panama Canal Revolving Fund and cannot spend any of this money unless specifically authorized by law. 22 U.S.C. § 3712(c)(1). The Revolving Fund is part of the United States Treasury and its assets are available to carry out the purposes, functions, and powers of the PCC. 22 U.S.C. § 3712(a)(1). There are no provisions for private profit, and accordingly, the PCC meets this aspect of the control test.[6]

The final element of the control test is whether PCC membership is limited to government connected persons. All PCC employees are subject to the same duties and responsibilities as federal employees and must conform to a code of conduct that by statute incorporates restrictions sub-stantially equivalent to provisions of law applicable to federal employees. 22 U.S.C. § 3622(a); 22 U.S.C. § 3622(b).[7] The head of any federal agency may enter into an agreement by which employees of that agency may serve a tour with the PCC and later return to their original employer without loss of pay, seniority, or other rights and benefits. 22 U.S.C. § 3643(a). An employee who is denied reemployment with his agency after service with the PCC can appeal to the Merit Systems Protection Board, even if he or she does not enjoy a veteran's preference. *Noble v. Tennessee Valley Authority*, 892 F.2d 1013, 1016 (Fed.Cir.1989) (citing 5 C.F.R. 352.909), *cert. denied,* —— U.S. ——, 110 S.Ct. 3214, 110 L.Ed.2d 662 (1990). The Federal Labor Relations Authority handles disputes arising between the PCC and its employee unions.[8] *Panama Canal Com. v. Federal Labor Relations Authority*, 867 F.2d 905 (5th Cir.1989). There are many other protections and restrictions applicable to PCC employees that are also distinctly similar to those accorded by the United States to its employees. However, we have already listed an adequate sample to show PCC employment is sufficiently connected to the government to satisfy this element of the control test.

The PCC is controlled by the United States government, operates to serve governmental purposes, does not benefit private interests, and is limited to government connected persons. Therefore, the essential characteristics of the PCC identify it as an agency of the United States, making the wages it pays subject to federal income

---

ence to the Government of the Trust Territory of the Pacific Islands, an entity is an agency if its duties encompass functions which fall within the responsibility of the United States, whether that responsibility and its correlative power derive from sovereignty or from a trusteeship agreement).

**6.** Payne argues that the fact the PCC is permitted to operate at a profit suggests the body is not a federal agency. We believe it is not the capacity to produce revenues in excess of expenditures, but rather, the inurement of profit to private interests, that is the strongest indicator

an entity is not a federal agency. *See Kalinski,* 528 F.2d at 973 n. 13.

**7.** The existing provisions include provisions relating to bribery, graft, and conflicts of interest, and the Ethics in Government Act. 22 U.S.C. § 3622(b).

**8.** The purpose of the Federal Labor Relations Authority is to prescribe certain rights and obligations of the employees of the federal government and to establish procedures which are designed to meet the special requirements and needs of the government. 5 U.S.C. § 7101(b).

taxation.[9]

An analysis of the policies underlying Section 911 also indicates it is an agency for the purposes of the section. The section is designed to encourage citizens of the United States to go abroad to share technical skills. To place these venturesome citizens on an equal footing with citizens and other foreign nationals residing in the host country, who often are not taxed by their own nation, Congress eliminated the possibility of their being taxed by both the United States and the host country by allowing them to exclude their foreign earned income from their gross income for purposes of computing federal income tax. Congress added the exception for amounts paid by the United States government or an agency thereof to prevent a windfall to United States government employees in foreign countries. Since treaty provisions usually exclude United States government employees from paying income tax to their host country, excluding them from paying federal income taxes on their foreign earned wages was not necessary or desirable. *See Smith v. Commissioner*, 701 F.2d 807 (9th Cir.1983) (citing *McComish v. Commissioner*, 580 F.2d 1323 (9th Cir. 1978). In *O'Connor*, 479 U.S. 27, 107 S.Ct. 347, the Supreme Court held that the Treaty of 1977 exempted from Panamanian taxation wages earned by United States citizens employed by the PCC. Thus, subjecting Payne's PCC wages to federal income taxation does not levy a second tax upon them and granting Payne an exemption from federal taxation under Section 911 would free her from paying any income taxes and result in a windfall to her.

The cases cited by Payne do not persuade us the PCC is something other than an agency of the United States nor do they

convince us it is necessary to take further evidence to make a decision in this matter. *Krichbaum v. United States*, 138 F.Supp. 515 (E.D.Tenn.1956) held that where an agency of the United States merely serves as a conduit for funds paid to the worker by a foreign nation, the employee's wages are exempt. This view has been expressly disregarded by appellate opinions such as *Commissioner v. Wolfe*, 361 F.2d 62 (D.C.Cir.1966), *cert. denied, Wolfe v. Commissioner*, 385 U.S. 838, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966), that look to the nature of the relationship between the entity and the worker, rather than to the source of the funds ultimately paid to the worker, in determining whether wages are exempt.[10] We favor the *Wolfe* view because we believe *Krichbaum* restricts too narrowly the definition of agency by making it depend on who fills the role of payor. *See Kalinski*, 528 F.2d at 973.

*Brummitt v. United States*, 329 F.2d 966, 165 Ct.Cl. 78 (1964) merely presents an application of the control test, where the relevant factors indicated the military club in question was not an agency of the United States. In *Brummitt*, the court found the club's considerable profits inured to private interests, the military exercised no fiscal control over the club or conducted any audits,[11] and one could join the club without being connected to the United States government. Thus, the essential elements of control were not present and the court held the club was not an agency of the United States.

*McComish v. Commissioner*, 580 F.2d 1323 held the Trust Territory of the Pacific Islands was not an agency for purposes of Section 911. It is necessary to contrast this case with *Groves v. United States*, 533

9. Nothing in the cases suggests each and every element of the four part test must be met in order to attain agency status. Even if this were the case, the PCC satisfies each of them.

10. The court in *Wolfe* looked to factors such as who supervised the employee, who had the power to hire and fire the employee, and who were the actual parties to the employment contract, rather than to the source of funds paid to the employee. Were we to examine these factors here, it is clear the PCC and Payne had a tradi-

tional employer-employee relationship. There is no argument to support Payne's view that her husband actually worked for the original source of the funds—the vessels passing through the Canal—and the PCC only served as a conduit to pass a portion of those funds to Payne's husband.

11. The PCC, on the other hand, is subject to audit by the Comptroller General of the United States, who must submit the audit to the Congress. 22 U.S.C. § 3723(a).

F.2d 1376 which held the Trust Territory was an agency for purposes of Section 911. The *McComish* court applied the control test and determined that the Trust Territory was not an agency of the United States because the United States could not dissolve the Trust Territory as an entity or change its trusteeship status without the consent of the United Nations.[12] The *Groves* court looked at the function of the Trust Territory as well as aspects of control and determined that the Trusteeship Agreement's ceding of powers of administration, legislation, and jurisdiction to the United States[13] and the fact that a high percentage of governmental funds came from the United States were sufficient indicia of United States control to find the Trust Territory was an agency of the United States for purposes of Section 911.

Although we believe there are sufficient indicia of control to find the Trust Territory was a United States agency for purposes of Section 911 we see no need to confirm our suspicion by conducting such an analysis here. Rather, we note each court's methodology was consistent with the other's and our own. There was merely a disagreement over how to analyze the relevant facts. We see little similarity between the PCC, which is directly controlled by the Secretary of Defense, and the Trust Territory of the Pacific Islands, which is arguably a foreign sovereign operating under the wing of the United States, and therefore find *McComish* unpersuasive on the issue of whether the PCC is an agency of the United States.[14]

## CONCLUSION

We find the Panama Canal Commission is an agency of the United States and therefore, 26 U.S.C. Section 911 does not exempt from federal income taxation wages the PCC pays its employees who are United States citizens. Payne's 1982 income is subject to federal income taxation and she is liable for any amount due. For the foregoing reasons, the motion of the United States for summary judgment is granted.

The Clerk of Court shall enter judgment for the United States. No costs.

12. We also note that the *McComish* court found the taxpayer in the case would have been subject to local income taxation at the time the case was written and therefore was not one of those employees who would have reaped windfall benefits in the absence of the Section 911 exception. *McComish*, 580 F.2d at 1326. Contrast this with the instant case where the Treaty of 1977 exempted Payne from paying Panamanian taxes and a like exemption from United States taxes would have created a windfall.

The *McComish* court also noted the equities of the taxpayer's status counseled against applying the exception to him. Specifically, the court found the fact that McComish received no federal retirement, social security, sickness, or disability benefits and was not exempted from the Federal Tort Claims Act inconsistent with taxing him as if he were a federal employee. Assuming *arguendo* that one should only be required to pay income taxes if they receive fringe benefits from their work, PCC employees are entitled to many of the same benefits as federal employees. *See* 22 U.S.C. §§ 3641–3701.

13. *McComish* indicates the United State's power of administration is circumscribed by other provisions of the agreement. For instance, the United States is required to promote the development of self-government by the people of the Trust Territory and cannot alter the nature of the agreement without the consent of the United Nations. However, the fact that the United States is required to promote self-government does not prevent it from exercising control. Nor does the United Nations have power to freely alter the trusteeship agreement or to sanction the United States for the way it administers the agreement. The Trust Territory's status as a strategic area places related matters before the Security Council. Since the United States has the power to veto affirmative acts of the Security Council it can insulate itself from affirmative acts of the United Nations with respect to its administration of the Trust Territory. *See Groves*, 533 F.2d at 1384 n. 13.

14. Nor does the apparent conflict between *Groves* and *McComish* alter our belief we have sufficient information regarding the operation of the PCC to make the determination it is an agency of the United States.