In re Ruby P. BARDEN, Debtor.

No. CV 95–239.

United States District Court,
E.D. New York.

April 13, 1996.

Weinberg, Kaley, Gross & Pergmanent by Marc A. Pergament, Anne C. Pollaro, Garden City, NY, for Chapter 7 Trustee.

Zachary W. Carter, United States Attorney, Eastern District of New York by Thomas A. McFarland, Assistant United States

Attorney, Tamara H. Lindquist, Trial Attorney, Tax Division, Brooklyn, NY, for U.S.

Dennis C. Vacco, Attorney General of State of New York by Terri Hupart Altamura, Assistant Attorney General, New York City, for N.Y. Commissioner of Taxation and Finance.

Melvyn Jacoby, Medford, NY, for Debtor.

## *MEMORANDUM DECISION and ORDER*

SPATT, District Judge.

In this Chapter 7 bankruptcy case, the Trustee of the bankruptcy estate, Marc A. Pergament, appeals from the December 7, 1994 Order of United States Bankruptcy Judge Francis G. Conrad, which denied the Trustee's motion to use the one-time capital gains tax exclusion on the sale of a residence, pursuant to Internal Revenue Code § 121, for the benefit of the bankruptcy estate and directed the Trustee to use the debtor's basis in the real property to determine the capital gains tax owed by the estate. The United States and the State of New York Commissioner of Taxation and Finance oppose the Trustee's position on this appeal.

### I. *BACKGROUND*

The debtor Ruby P. Barden, filed a voluntary bankruptcy petition on June 7, 1993, pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* At that time, Ms. Barden owned a residential property located at 73 Head of the Neck Road in Bellport, New York. The house was subject to two mortgages totalling $63,000.00. Ms. Barden also had $34,000.00 in unsecured debt at the time of the filing. Upon the filing of the bankruptcy petition, the debtor's interest in the real property became the property of the bankruptcy estate. 11 U.S.C. § 541.

The Bellport residence was sold by the Chapter 7 Trustee on February 28, 1994 for the sum of $101,500.00. The two mortgages were satisfied from the proceeds of the sale, and a capital gain of $46,695.00 was realized, which includes the debtor's $10,000.00 homestead exclusion pursuant to Section 522 of the Bankruptcy Code.

The Trustee brought a motion in the Bankruptcy Court to determine the tax liability of the estate. In that motion the Trustee argued that the estate should be entitled to exclude the gain on the sale of the Bellport residence from income under Section 121 of the Internal Revenue Code, which provides a one-time capital gain exclusion to individuals over the age of 55 who realize up to $125,000.00 on the sale of a primary residence. Both the federal and New York State taxing authorities opposed the Trustee's use of this exclusion. Under New York tax law, a resident taxpayer's adjusted gross income is the same as the taxpayer's federal adjusted gross income (subject to certain modifications that are not relevant to this appeal), which means that the federal exclusion is also applicable to the taxpayer's income for state tax purposes.

The Trustee appeals from the December 7, 1994 Bankruptcy Court decision, which denied his motion to use the Section 121 one-time exclusion for the benefit of the bankruptcy estate. In this appeal, the Trustee argues that the bankruptcy estate should be entitled to utilize the debtor's exemption or, in the alternative, that the bankruptcy estate should succeed to a "stepped up" basis in the residence in order to maximize the distribution to the debtor's unsecured creditors.

### II. *DISCUSSION*

A. *Standard of review*

 Findings of fact made by the bankruptcy court are reviewed by the district court on appeal under a clearly erroneous standard and conclusions of law are reviewed *de novo.* U.S.C. Bankr.R. 8013; *In re Momentum Manufacturing,* 25 F.3d 1132 (2d Cir.1994).

B. *One-time capital gain exclusion from sale of a residence*

 Section 121 of the Internal Revenue Code permits individual taxpayers over the age of 55 to exclude from their gross income a gain of up to $125,000 from the sale of a primary residence under the following conditions:

§ 121 One time exclusion of gain from sale of principal residence by individual who has attained age 55

(a) General rule.—At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—

(1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and

(2) during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.

*Id.* When interpreting the tax laws the Court should adhere to the principle that, "exemptions from taxation are to be construed narrowly." *See, e.g., Bingler v. Johnson,* 394 U.S. 741, 752, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969). "Moreover, we cannot be unmindful of the rule of construction that Congress permits exclusions only as a matter of grace, and the exclusions sections are to be strictly construed against the taxpayer." *Estate of Levine,* 526 F.2d 717, 721 (2d Cir. 1975) (citations omitted). The burden is on the taxpayer to identify the provision of the Internal Revenue Code that unambiguously authorizes exclusions from income. *Payne v. United States,* 778 F.Supp. 804, 808 (D.Vt. 1991), *aff'd,* 980 F.2d 148 (2d Cir.1992), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993).

The Trustee draws the Court's attention to Section 105 of the Bankruptcy Code, which provides that "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provision of this title...." It is the Trustee's position that this section permits the Court to fashion an "equitable result" in which the bankruptcy estate may utilize the Section 121 exclusion. The Trustee argues that such a result will promote the purposes of the Bankruptcy Code by providing the debtor with a "fresh start and [ ] maximiz[ing] the funds available for distribution to unsecured creditors from the Bankruptcy Estate." *See, e.g., In re Fournier,* 169 B.R. 282, 284 (Bankr.D.Conn. 1994). The Trustee argues that if the bankruptcy estate is not permitted to use the one-time exclusion, then the intent of the Bankruptcy Code will be frustrated because the creditors' distribution will be reduced and the tax authorities will receive a windfall that they would not have received had the debtor not sought the protection of a Chapter 7 bankruptcy filing. The Court agrees that the estate's use of an income exclusion would impact the amount of funds available for distribution to the creditors, but does note that debtor's "fresh start" would not be in any way affected by a decision regarding the estate's tax liability.

In denying the Trustee's motion to take the one-time exclusion under Section 121, Judge Conrad expressly relied on the reasoning of *In re Mehr,* a bankruptcy case from the District of New Jersey, in which the court held that the bankruptcy trustee was not entitled to make an election under 26 U.S.C. § 121. *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993). Looking to the plain language of Section 121, the *Mehr* court concluded that the term "taxpayer" in Section 121 did not include a bankruptcy estate because it is not an individual of at least 55 years of age who used the home as a primary residence for at least three of the five years preceding its sale. *Id.* at 433. The *Mehr* decision also noted that the policy concern underlying the capital gain exclusion is "*individuals* over age 55 to help promote savings for retirement years." *Id.* at 434 (citing H.R. 749, 88th Cong., 2d Sess. (1964), 1964 U.S.C.C.A.N. 1354). "When Congress in plain language has expressed its intention, and the legislative history does not demonstrate a contrary purpose, the court is bound to follow the statutory provision as written." *Id.* at 433; *see also, Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 607–09, 99 S.Ct. 1905, 1910–12, 60 L.Ed.2d 508 (1979).

With regard to the Trustee's argument that the debtor is to receive or inherit a "fresh start" from the bankruptcy filing, the Court notes that it is the creditors, not the debtor as an individual, who would benefit from the estate's use of the debtor's Section 121 exclusion. The creation of the bankruptcy estate divests the debtor of title and rights to property, with the assets going to the trustee for the benefit of creditors and

parties in interest. *See* 11 U.S.C. §§ 541, 704.

The Trustee urges the Court to draw an analogy between a bankruptcy trustee and the executor of a decedent's estate. The Trustee argues that under such an analogy, the Court could apply the holding of Internal Revenue Service Revenue Ruling 82–1 to permit him to elect the Section 121 exclusion. *Rev. Rule* 82–1, on the facts of the case it addressed, held as follows:

> The gain from the sale of the decedent's personal residence is excludable to the extent provided under section 121 of the Code if the election is made by the executor on the decedent's final Federal Income Tax Return (Form 1040).

*Id.* The Trustee notes that the residence of the debtor Barden was transferred to the bankruptcy estate under conditions that would have entitled her to assert a Section 121 exclusion had she sold the property herself. When Barden filed her bankruptcy petition she was more than 55 years old and had resided in the home for at least three years prior to its sale. The Trustee argues that under these circumstances he should be able to "step into the shoes" of Barden and assert the same exclusion, just as the executor was permitted to do under *Rev.Rul.* 82–1, which held that "consistent with the extension of rights and privileges accorded a fiduciary under Section 6903, the executor [of the decedent's estate] may stand in the shoes of the decedent for purposes of making the election under Section 121." *Rev. Rule* 82–1.

The Trustee argues that certain similarities between a bankruptcy estate and a decedent's estate support this conclusion, namely [i]n both cases, estates are created into which are transferred the assets of the bankrupt and decedent respectively. Fiduciaries are then appointed by the Court, (a Trustee in the case of a bankrupt's estate and an executor or administrator in the case of a decedent's estate), to settle the affairs of the debtor and decedent respectively. As fiduciaries their duties include marshalling of assets, the determination of debts and liabilities and the payment to creditors. Finally, in theoretical terms, the beneficiaries of the decedent's estate inherit whatever assets remain after the payment of debts and taxes by the fiduciary and the debtor of the bankrupt estate "inherits" a "fresh start" after the payment of debts and taxes by the Trustee."

Brief of Appellant, at 5. The Trustee also notes that while a decedent's estate is created for the benefit of heirs, it also exists for the benefit of creditors and interested persons who may petition for the probate of a will. *See* N.Y. Surrogates Court Procedure Act §§ 1001, 1402. Although the Trustee's analogy is an interesting one, in the Court's view it does not recognize important distinctions between a decedent's estate and a bankruptcy estate.

First, the bankruptcy trustee's obligations to creditors differ from that of an executor. While an executor is clearly responsible for payment of estate's debts, the executor does not have the same duty as a bankruptcy trustee to maximize the distribution to creditors. *See, e.g., Fournier, supra,* 169 B.R. at 284. The executor of a deceased's estate administers the estate in place of the deceased individual and only one tax return is filed. In contrast, an estate created by an individual bankruptcy filing is a separate taxpaying entity; the debtor and the bankruptcy estate have independent duties to file tax returns. *See* 26 U.S.C. §§ 1938(e)(f). Furthermore, as the government notes, the debtor and the bankruptcy estate may even have adverse interests with regard to use of the one-time exclusion, in that if the debtor's estate elects the Section 121 exclusion, the debtor would be foreclosed from such an election in the future in connection with the sale of post-bankruptcy acquired property. Such conflicts regarding future use of the exclusion would not arise in the context of a decedent's estate.

█ In the Court's view, *Rev.Rul.* 82–1 does not extend by analogy to control the outcome of this bankruptcy appeal. "Revenue rulings represent the official IRS position on application of tax law *to specific facts,*" and are entitled to great deference. *Salomon Inc. v. U.S.,* 976 F.2d 837, 841 (2d Cir.1992) (emphasis added). There are significant factual and legal distinctions be-

tween the case of the decedent's estate in *Rev.Rul.* 82–1 and the present bankruptcy case. In addition, the plain language of Section 121 concerns individual homeowners over the age of 55, as does its underlying policy. In the absence of any statutory authority permitting Section 121 to be used for the benefit of a bankruptcy estate, the Court declines to fashion such a result based on general equity powers.

## C. *Section 1398 of the Tax Code*

■ The Trustee also contends that his right to succeed to the debtor's Section 121 election "is implicit in the language and intention of I.R.C. § 1398(g)," which provides in relevant part as follows:

(g) ESTATE SUCCEEDS TO TAX ATTRIBUTES OF DEBTOR.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

(1) Net operating loss carryovers. . . .

(2) Charitable contributions carryovers. . . .

(3) Recovery of tax benefit items. . . .

(4) Credit carryovers, etc. . . .

(5) Capital loss carryovers. . . .

(6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

(7) Method of accounting. . . .

(8) Other attributes to the extent provided in regulations prescribed by the Secretary. . . .

*Id.* The Trustee contends that subsection (6) should be read to include a Section 121 exclusion as one of the attributes to which the bankruptcy estate succeeds. However, the Trustee cites no authority for such an interpretation. The Court declines to accept the Trustee's interpretation as "implicit" in this section. Implying such a result is contrary to the principles of construction discussed above, which require the Court to construe exclusions narrowly against the taxpayer.

*See Bingler, supra,* 394 U.S. at 752, 89 S.Ct. at 1445; *Levine, supra,* 526 F.2d at 721.

Section 1398 does not expressly provide for the estate to succeed to a Section 121 exclusion or any other exclusion to which the debtor would be entitled. In the Court's view the following language from the *Mehr* decision is appropriate:

Moreover, there were not any regulations prescribed by the Secretary in accord with § 1398(g)(8) to include other tax attributes like the § 121 election to be taken by the bankruptcy estate. It is not the function of this Court to enact regulations providing for this § 121 election to be taken by the estate. This function is embodied in the role of Congress or the Secretary to allow for the § 121 election to be taken by the estate. Absent specific authority by the Code to enable a Trustee to utilize such election, this Court clearly cannot permit such an election to be taken.

*Mehr, supra,* 153 B.R. at 438. In other words,

[U]nless the Secretary of the Treasury has enacted regulations adding particular tax attributes to the list set forth in section 1398(g), the courts are not empowered to read such additional attributes into the statute. The statute is clear. It contemplates a specific administrative procedure to enlarge the list of federal tax attributes that pass to estates in bankruptcy.

*In re Rueter,* 158 B.R. 163, 167 (N.D.Cal. 1993) (citing *In re Antonelli,* 92–2 USTC ¶ 50,619, at 86,176–77, 1992 WL 403097 (Bankr.D.Md.1992); *DiStasio v. U.S.* 22 Cl. Ct. 36, 50, 52 (1990); and *Mehr, supra* ).

The Court declines to interpret Section 1398 so as to entitle the bankruptcy estate to succeed to a qualified debtor's capital gain exclusion under Section 121 in the absence of language to that effect in the statute itself. As the United States points out in its brief, Congress chose to enumerate those specific attributes to which the bankruptcy estate succeeds rather than providing for the estate to succeed to all tax attributes of the debtor. The Court can only conclude that if Congress or the Secretary of the Treasury had intended for a bankruptcy estate to succeed to an eligible debtor's Section 121 exclusion, then

they would have taken the opportunity to say so in the statute or the regulations.

The Trustee has not identified a provision in the Tax Code that unambiguously authorizes a bankruptcy estate to exclude the capital gain realized on the sale of the debtor's residence from the estate's income. *See Payne, supra,* 778 F.Supp. at 808. Rather, his arguments rely on analogy and implication. In the Court's view, the Bankruptcy Court ruled correctly that the Trustee was not entitled to make an election pursuant to 26 U.S.C. § 121 for the benefit of the bankruptcy estate.

### D. *Stepped up basis*

■ The Trustee also argues that the Bankruptcy Court erred in not permitting the bankruptcy estate to receive a "stepped up" basis in the debtors property "akin to that allowed in the laws related to decedent's [sic] estates." Appellant's Brief at 6. The Tax Code provides that the basis of property in the hands of a person acquiring the property from a decedent is the fair market value at the date of the decedent's death. 26 U.S.C. § 1014.

■ As discussed above, the Tax Code specifically provides that the debtor's basis is transferred to the bankruptcy estate, where the transfer is not a sale or exchange. *See* 26 U.S.C. § 1398(g)(6). Section 1398(f) provides,

TREATMENT OF TRANSFERS BE-TWEEN DEBTOR AND ESTATE.—

(1) TRANSFER TO ESTATE NOT TREATED AS DISPOSITION.—A transfer (other than sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

26 U.S.C. § 1398(f)(1). A bankruptcy estate's succession to property by the filing of a bankruptcy petitions is not considered a taxable event, therefore the estate receives the debtor's basis in the property. *See In re Kochell,* 804 F.2d 84, 87 (7th Cir.1986); *see*

*also In re Young,* 153 B.R. 886, 887 (Bankr. D.Neb.1993) ("[t]he Chapter 7 bankruptcy estate succeeds to the debtor's tax attributes pursuant to the Internal Revenue Code § 1398(g). The Trustee thus succeeds to the debtors' basis in property.").

To support his argument for a "stepped up" basis, the Trustee draws the Court's attention to the case of *In re Rasmussen,* 95 B.R. 657 (Bankr.W.D.Mo.1989). In *Rasmussen,* the court approved a stipulated settlement between the Chapter 7 Trustee and the Internal Revenue Service with regard to the estate's taxes. The court set forth a lengthy policy discussion, which concludes that considerations of "fairness of reality" favor a stepped up basis in the debtor's property for the estate, so that the unsecured creditors do not bear the burden of the debtor's tax liability. The court reasoned,

> "Exchange" is standardly defined by decisional authority as a transfer for any form of tangible property or intangible value. The definition may be sufficiently general and expansive to require a holding that, when debtors transfer property to their bankruptcy estate, receiving a return in discharge of the debts which they owe creditors in amounts which ordinarily equal or exceed the value of the property transferred, it is a transfer by "exchange"—the discharge of a pre-existing debt for the transfer of the property.

*Id.* at 659. The *Rasmussen* court proposed an interpretation of Section 1398(f) that would grant the taxing authority a lower priority claim than that of unsecured creditors. The court voiced concern that in cases where the tax liability exceeds the amount of money on hand in the estate, not only would unsecured creditors go unpaid, but the trustee might bear individual responsibility for the debtor's nondischargeable tax liability. *Id.* The *Rasmussen* approach is characterized by a certain fairness and logic, especially from a creditor's point of view. However, it is stated in the context of a settlement, not a holding, and this Court is aware no others that have adopted its "proposed interpretation" of section 1398(f). As another court observed, "a court is not free to ignore the law merely because it perceives the law as

unfair or ill-conceived. This rule is no less applicable to a bankruptcy court than to any other court." *In re Card*, 114 B.R. 226, 228 (Bankr.N.D.Cal.1990). In *Card*, the court also noted the following:

> By imposing the capital gains tax on the bankruptcy estate as an expense of administration, liability for the tax is shifted from the debtor to the creditor. For this reason several courts in prior years ruled that a liquidating estate was not liable for such taxes. See, e.g., *In re Statmaster Corp.* (S.D.Fla.1971) 332 F.Supp. 1248, 1260; *In re F.P. Newport Corp.* (C.D.Cal. 1956) 144 F.Supp. 507.

> However, the policy of collecting revenue overcame the policy of doing equity to creditors. Higher courts ruled that a liquidating trustee in bankruptcy is in fact liable for capital gains tax on the sale of estate assets. *U.S. v. Sampsell*, 266 F.2d 631 (9th Cir.1959); *In re I.J. Knight Realty Corp.*, 501 F.2d 62 (3d Cir.1974). The current law is that the trustee in a Chapter 7 case must both honor the debtor's homestead exemption and pay the capital gains tax when he sells the debtor's residence. *In re Duby*, 98 B.R. 126 (Bankr.D.R.I. 1989); *In re Lambdin*, 33 B.R. 11 (Bankr. M.D.Tenn.1983).

*Id.* at 227–28.

The Trustee has provided no legal authority for the proposition that he should receive a "stepped up" basis in the debtor's property. Indeed the argument he advances is contrary to the plain language of the Section 1398(g) of the tax, which provides that bankruptcy estate shall succeed to the debtor's basis in any asset acquired from the debtor (other than by sale or exchange). 26 U.S.C. § 1398(g)(6). Accordingly, the Bankruptcy Court correctly determined that the estate's basis in the real property is that of the debtor.

### III. *CONCLUSION*

Based on the foregoing, the December 7, 1994 Order of United States Bankruptcy Judge Francis G. Conrad is affirmed.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**