### ELIZABETH RENDLEMAN

### *v.*

### JEROME T. RENDLEMAN.

*Filed at Mt. Vernon October 7, 1886.*

1.  HOMESTEAD—DIVORCE—*effect on the right of homestead.*  The effect of a decree of divorce of a husband from his wife, for her fault or misconduct, is the forfeiture of her right of dower and any estate of homestead she may have had in his lands.

2.  The homestead right of a husband or wife acquired by the desertion of the other, is held subject to a condition of forfeiture upon the marriage relation being dissolved by a divorce granted on account of the fault or misconduct of the one having such right.  Section 2 of the act relating to exemptions must be construed with section 14 of the Dower act, so that both may stand, and have full force and effect given to each.

3.  FOREIGN DIVORCE—*presumption as to jurisdiction.*  Where the record of a suit for divorce in another State appears to be regular on its face, and shows the appearance of the parties, and a final decree dissolving the marriage relation, it will be presumed such court had the power to render the decree.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. O. A. HARKER, Judge, presiding.

Mr. R. J. Young, and Mr. R. J. Stephens, for the plaintiff in error:

In case of desertion, the exemption continues in favor of the one remaining in occupancy of the premises. Rev. Stat. chap. 52, sec. 2.

The homestead is a statutory estate and right, purely, and. it can be aliened or incumbered only in the manner prescribed by the statute, (*Eldridge* v. *Pierce,* 90 Ill. 474,) and neither fraud nor the commission of a crime works its forfeiture. *Leupold* v. *Krause,* 95 Ill. 440.

We submit, also, that defendant's homestead in the premises was a vested estate, and that the decree of the District. Court of McPherson county, Kansas, in the divorce proceeding, was incompetent, and powerless to affect it. Says this. court, in the case of *City Insurance Co.* v. *Commercial Bank,* 68 Ill. 348 : "No doctrine is better settled by authority than. that the title to real estate or immovable property can only be affected in the mode recognized by the laws of the State within whose territory it is situated." See, also, *Harris* v. *Pullman,* 84 Ill. 20; Wharton on Conflict of Laws, secs. 272-291.

Adultery alone does not work a forfeiture of dower. The statute applies only to a case where the party leaving the other, commits adultery. (Chap. 41, sec. 15.) Here, the wife did not leave the husband, but he left her. Besides, the statute does not apply to homestead.

The words, "any estate granted by the laws of this State," (sec. 14,) following particular words, apply only to things of the same class as dower or jointure. Sedgwick on Construction of Statutes, 361.

By section 5 of the act relating to homesteads, the court, in case of a divorce, is authorized to dispose of the homestead according to the equities of the case. This power of disposition excludes the idea of forfeiture under section 14 of the Dower act.

The only divorce contemplated by section 14 is an Illinois divorce. A court of another State can not divest an estate here. There is no recital of such jurisdiction, and while it is a general rule that the presumption is in favor of the jurisdiction of a court of record, yet it is also to be presumed, and, in the absence of proof to the contrary, this court will presume, that the common law is in force in the State of Kansas. *Crouch* v. *Hall,* 15 Ill. 263.

But by the common law, only the ecclesiastical courts had jurisdiction of the subject matter of divorces, and in this country statutory authority is necessary to confer jurisdiction over that subject upon the ordinary courts of law. 1 Bishop on Marriage and Divorce, secs. 30, 31, 71; 2 id. sec. 291.

Mr. W. W. BARR, and Mr. W. J. ALLEN, for the defendant in error:

It is obviously essential to the effectual operation of the design of the constitution, that the records of the judgments of other States, duly authenticated, should not merely prove themselves, but give rise to a presumption that the court possessed the authority which it assumed to exercise. Freeman on Judgments, sec. 565.

During the pendency of a suit by a husband for a divorce, the wife will have the right to remain in an apartment of his house, in virtue, alone, of the marriage relation, but after decree of divorce, her rights to any and all parts of it will cease, and if she continues to remain against the will of the husband, she will be a mere intruder. *Brown* v. *Smith,* 83 Ill. 291.

A decree which dissolves the marriage absolutely, and destroys the marriage status indirectly, puts an end to all rights dependent upon a coverture. Stewart on Marriage and Divorce, sec. 427.

A divorce *a vinculo matrimonii,* absolutely dissolves all marriage ties, and destroys the relation of husband and wife.

After the date of the decree the man has no wife, the woman no husband. The woman is a *feme sole*. With such a divorce all estates during coverture cease. Stewart on Marriage and Divorce, sec. 430.

After a divorce *a vinculo*, the wife is an intruder in her husband's house. He can shut it up and bar her out. Stewart on Marriage and Divorce, sec. 435.

A decree of divorce, unless otherwise provided by local law, puts an end to all obligations of either party to the other, and to any right which either has acquired, by the marriage, in the other's property. *Barrett* v. *Sailing*, 111 U. S. 523.

Mr. Justice Mulkey delivered the opinion of the Court:

This was an action of ejectment, brought by Jerome T. Rendleman, in the circuit court of Jackson county, against Elizabeth Rendleman, for the recovery of the south half of the south-east quarter, and the north-east quarter of the south-east quarter of section 35, town 10 south, range 1 west, in said county, the plaintiff claiming the same in fee. The defendant set up a right of homestead and of dower in the premises, and this was the only defence relied on. The cause was tried upon the merits, resulting in a judgment for the plaintiff, to reverse which this appeal is brought.

As appears from plaintiff's affidavit in the record, both parties claim through George Rendleman, formerly the husband of the defendant. On the trial, the plaintiff put in evidence, without objection, a deed for the premises from George Rendleman and wife, acknowledged on the 10th day of March, 1882, and recorded on the 31st of July of the same year, the deed itself being without date. The defendant was then examined as a witness in her own behalf, and from her testimony it appears, that in 1854 she and the said George Rendleman, her then husband, moved upon and occupied the premises in controversy as a homestead until 1869, when they

temporarily moved to Makanda, a distance of two and a half miles, where they lived from October of that year until the month of April following, when he left for Kansas, and she and their two then minor children returned to the homestead premises, which she has ever since occupied, either by herself or by her tenants. To meet the case thus made by the defendant's testimony, the plaintiff introduced in evidence an authenticated copy of the record of a suit for a divorce, brought by George Rendleman, against the said Elizabeth, to the September term, 1877, of the District Court of McPherson county, Kansas, wherein the latter was charged with adultery. The transcript of the record in question shows that both parties appeared in person, and by attorney, and that the court made in said cause the following special findings:

"*First*—That defendant had sexual intercourse with Norman J. Schultz, on or about the 20th day of May, 1871, at the city of Centralia, . . . . . . . county, Illinois.

"*Second*—That plaintiff and defendant were not living together at the time of commission of said act of adultery with Schultz by defendant, but plaintiff had abandoned her and separated from her in the month of April, 1870, by leaving her and their children in the State of Illinois, and going to the State of Kansas, on the promise of returning, and for the planned purpose of traveling for his health; that just before starting for Kansas he *sold and deeded, without knowledge of defendant, to one of his brothers residing in Illinois, the only tract of real estate owned by him in said State.* He received $2000 from such sale, and with it, on arriving in Kansas, located himself here, and never returned to defendant, or sent for her, or supplied her with any means of support, save that he lived with and supported her for about three weeks, in 1876, on her visiting him in Kansas, and he left her in custody of $300 to $400 worth of personal property, and the defendant, after litigation, has had possession of, and the use, for a portion of the time, of the said real estate sold by plain-

tiff; that defendant is now residing with her father; that plaintiff did not so leave defendant wholly of his own fault, but partly for and on account of the fault of the defendant, in her mistreatment of him and the children, and making his home unhappy by reason of an ungovernable disposition, and had at times (for how long does not appear) refused to cohabit with him as a wife.

"*Third*—That the reputation of defendant for chastity and virtue, in the community in which she has lived in Illinois, is, and has been for four years last past, bad, and that she probably committed an act of adultery with John Waters, in Carbondale, State of Illinois, in the year 1875, about the month of April.

"*Fourth*—That defendant has no property at this time; that plaintiff has, in the State of Kansas, an equitable interest in lands and personal property, of the value of $2000 or more; that plaintiff has secured or supplied defendant, on application to the court, for counsel fees in this cause, $50.

"*Fifth*—That the marriage of the parties is admitted by the pleadings, and that cohabitation followed such marriage up to about the time of plaintiff's leaving defendant and coming to Kansas.

"*Sixth*—That two children are now living, as the fruits of such marriage,—a boy of about the age of twenty-one years, and a girl of about the age of thirteen years,—both living with and in the care and custody of defendant, in the State of Illinois."

The court then found, as conclusions of law, first, that the defendant was guilty of adultery with Norman L. Schultz, as charged in plaintiff's petition; second, that $650 was a reasonable amount to allow as alimony to the defendant, under the circumstances. The final decree then dissolves the marriage between the parties, on the ground of the wife's adultery, awards her the sum of $575, "in full of all claims, right of dower, or otherwise, in the property, whether personal or

real, of the husband, now or hereafter to be acquired, and the costs of suit." The plaintiff in this suit also introduced in evidence a quitclaim deed for the premises, from Martin Rendleman and wife, to the plaintiff, dated February 28, 1882, and filed for record July 31, 1882.

This was all the evidence in the case, whereupon the jury found the issue for the plaintiff, upon which the court rendered final judgment, as has already appeared.

We perceive no difficulty in this case. The 14th section of the Dower act we regard as conclusively settling the rights of the parties. It is as follows : "If any husband or wife is divorced for the fault or misconduct of the other, except where the marriage was void from the beginning, he or she shall not thereby lose dower nor the benefit of any such jointure, but if such divorce shall be for his or her own fault or misconduct, such dower or jointure, and any estate granted by the laws of this State in the real or personal estate of the other, shall be forfeited."

The record of the divorce proceeding in Kansas conclusively shows that George Rendleman was, in 1878, on his petition, divorced from plaintiff in error, for her fault and misconduct. If, therefore, she had "*any estate*" in his lands, "granted by the laws of this State," at the time of rendering the decree, such estate in her husband's land, by the express terms of the above section, became forfeited, and consequently afforded no defence to the present action. It is not pretended that the appellant ever had any interest in or claim upon the land, except such as accrued to her as the wife of George Rendleman. The homestead right, as well as the paramount title and ownership, were in him until 1870. At that time, in the exercise of a right which every owner of a homestead has, he deliberately abandoned the right of homestead, but the paramount title and ownership of the land continued in him. At the same time he abandoned the right of homestead, he deserted his wife and children. The wife having thus become

the head of the family, the law at once clothed her with a right of homestead in the same premises. This right of homestead is expressly declared by the legislature to be an estate in the lot of ground and building to which the right attaches. Like all other estates, it must be supported by a title. This title may be in fee, for life, or even for years, in the case of an extended term. In all cases the title must be either in the owner of the homestead right, or in one who sustains or has sustained some special relation to such owner, or in the assignee of one sustaining or having sustained such special relation to the owner. The relations here alluded to are, of course, that of husband and wife, and parent and child. With respect to the former, it is unimportant whether the title to the homestead premises is in the husband or in the wife. Whether in the one or the other, the holder of the title can not wrongfully deprive the other of the enjoyment of the homestead premises. Thus, it is expressly provided by the second section of the act relating to exemptions, that "in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the premises as a residence." This provision, however, must be construed in connection with the section above cited from the Dower act, so as to give effect to them both. This can only be done by holding that a homestead right of husband or wife, acquired by the desertion of one by the other, is held subject to a condition of forfeiture upon the marriage relation being dissolved by a divorce granted on account of the fault or misconduct of the one having such right, which we think is a proper construction of the two provisions of the statute.

The point is made by counsel, that the section cited from the chapter on divorces, is an instance of legislation where a specific enumeration is followed by general words, which, according to a well settled rule of construction, will be extended to such things only as are of the same kind as those specifically mentioned, and that as an estate of homestead is unlike

that of dower or jointure, the section in question has no application to the right of homestead. We do not think this view is sound. If the section does not extend to an estate of homestead, which is certainly nearer like the estate of a dowress than any other interest in land, particularly where it arises from desertion, as it does in this case, there is no interest or estate in land outside of dower and jointure to which it can extend, and that would be to make the concluding part of the section wholly inoperative. This we can not do. To say that the words, "*and* any estate granted by the laws of this State in the real or personal estate of the other," are but another expression for dower and jointure, is to do violence to the words used, and to defeat the manifest legislative intent. The use of "and," instead of "or," after the word "jointure," strongly negatives the construction contended for. We regard the branch of the sentence commencing with the word "and," just cited, as a distinct, substantive provision, adopted and inserted in that connection for the purpose of including any and every possible interest that the husband or wife for whose fault or misconduct divorce is granted, may have in the property of the other of which no disposition is made by the decree itself. Of course, the court, in making the decree, is authorized, under the statute, in settling alimony and providing for the children, to make any just and equitable disposition of the property of either, which the facts and circumstances in the case require. Rev. Stat. chap 40, secs. 17 and 18.

It is also objected that it does not affirmatively appear, from the record offered in evidence, or otherwise, that the District Court of Kansas had jurisdiction of the subject matter of the suit, and that for that reason the defendant is not to be affected in this proceeding by the adjudication in that court. We do not concur in this view. The record in question is authenticated in strict conformity with the act of Congress, and there is nothing upon the face of it, or otherwise, to

indicate a want of such jurisdiction. The suit, as appears from the record, was entirely regular, and according to the usual course of judicial proceedings in such cases. Such being the case, we must presume that the District Court of Kansas possessed the powers which it assumed to exercise. This view, while it may not be in accord with some of the earlier cases on the subject, is believed to be sustained by the current of recent decisions, and by the most approved text writers. Abbott on Trial Evidence, 545; Freeman on Judgments, 565; 4 Wait's Actions and Defences, 193; *Rae* v. *Hulbert,* 17 Ill. 572.

The other points made by counsel for appellant we regard as equally untenable.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*