Luciano POPA, Debtor, and the United
States of America, Appellants,

v.

Ronald R. PETERSON, Chapter 7
Trustee for the bankruptcy estate
of Luciano Popa, Appellee.

No. 98–C–2270.

United States District Court,
N.D. Illinois,
Eastern Division.

May 27, 1999.

Ronald R. Peterson, David R. Seligman, Jenner & Block, Chicago, IL, Trustee for Bankruptcy Estate.

Xiaoming Wu, Peter Francis Geraci, Chicago, IL, for Debtor.

D. Patrick Mullarkey, Tax Division (DOJ), Washington, DC, District Counsel, Internal Revenue Service, District Director, Internal Revenue Service, Samuel D. Brooks, Stacy Hallett, Trial Attorney, Tax Division, Assistant U.S. Attorney, Chicago, IL, for IRS.

### MEMORANDUM AND ORDER

MANNING, District Judge.

This matter is before the court on the appeals of Appellants Luciano Popa ("Popa") and the United States of America on behalf of the Internal Revenue Service ("IRS") from a judgment of the bankruptcy court determining that: (1) Popa's wife' ("Spouse") was not entitled to a homestead exemption on certain real property under 735 ILCS 5/12–901 because Popa, not his Spouse, held title to that real property, and (2) Trustee, Ronald R. Peterson, was entitled to consider, on behalf of the estate, for purposes of evaluating the estate's equity, a capital gains tax exclusion of up to $250,000 under 26 U.S.C. § 121.

1. The Trustee maintained that Popa carried over $70,000 from a prior home sale to purchase the Property.

2. The bankruptcy court subtracted from the Property's fair market value of $150,000 the following: the mortgage ($109,668.20), a

The standard of review on appeal of a bankruptcy court ruling is governed by Bankruptcy Court Rule 8013. Under Rule 8013, the court must accept the bankruptcy court's findings of fact unless they are clearly erroneous, and apply *de novo* review of law. The court has reviewed the judgment of the bankruptcy court, the record, and the briefs of the parties. For the reasons that follow, the decision of the bankruptcy court is AFFIRMED.

### BACKGROUND

The facts in this case are not in dispute and were obtained from the record presented by the bankruptcy court. This is an appeal from the bankruptcy court's Memorandum and Order, *In re Popa*, 218 B.R. 420 (Bankr.N.D.Ill.1998)(Barliant, J.). In August of 1996, debtor Popa filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code and received a discharge in December of 1996. The United States Trustee appointed Ronald R. Peterson ("Trustee") as the Trustee for Popa's bankruptcy estate ("the Estate").

On Bankruptcy Schedule A (Real Property), Popa identified himself as the sole owner of certain real property ("the Property"). Although Popa was the sole owner of the Property, he resided at the Property at all relevant times with his Spouse.

Popa purchased the Property for $150,000.[1] The Property had an estimated fair market value of $150,000, subject to a first mortgage of $109,668.20. Popa's other bankruptcy schedules listed $19,274 as unsecured debt.

The bankruptcy court determined that, if sold, the Property would result in $8,581.80 of equity for Popa.[2] The figure of

homestead exemption by Popa alone ($7,500), and the costs of sale ($24,250). The court summarized that the total equity available in the Property was $8,581.80. However, were the Spouse to also exercise the homestead exemption, the total equity in the Property would dwindle to $1,081.80.

$8,581.80 includes a homestead exemption taken by Popa under 735 ILCS 5/12–901 ("§ 901" or "the Homestead Act"). This calculation would provide a distribution of approximately 45 cents on the dollar, assuming all creditors filed claims in the scheduled amounts. .

If Popa's Spouse, however, were also to "take" a homestead exemption on the Property, as Popa asserts is her right to do, the equity available for distribution would be reduced by another $7,500 to $1,081.80. Were such a second homestead exemption to occur, by the Spouse, the equity available for distribution to creditors would be reduced to less than six cents on the dollar.

In light of these minimal figures, Popa filed a motion to compel the Trustee to abandon the Estate's interest in the Property under 11 U.S.C. § 554(b). Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Accordingly, Popa declared that after his Spouse took a homestead exemption, the Property was "of [such] inconsequential value and benefit to the Estate" that the § 554(b) motion must be granted.

The Trustee rejected Popa's contentions. The Trustee claimed that the Spouse was not a debtor in the action; did not hold title in the Property; and, consequently, was not entitled to a homestead exemption. According to the Trustee, since only Popa could claim the $7,500 exemption, there was sufficient equity in the Estate to compile for distribution. Thus, argued the Trustee, Popa's motion to require the trustee to abandon the Property pursuant to § 554(b) must be denied.

The Trustee also moved the bankruptcy court to determine the estate's tax liability under 11 U.S.C. § 505.[3] Generally, if Popa were to sell the Property, he would be entitled to a capital gains tax exemption under § 121. The Trustee asserted that the Estate, like Popa himself, should also be entitled to the § 121 capital gains tax exclusion. The capital gains tax on the sale of the Property would be roughly $12,000. It follows that if the exclusion were available to the Estate, via the Trustee, then the Estate's equity would increase. For example, instead of paying the IRS taxes on the capital gains on the sale of the Property, the Trustee could pay the creditors. However, if the Trustee is not entitled to the capital gains tax exclusion, the Estate's after-sale equity would be diminished by that tax amount leaving less equity for distribution to the creditors. Accordingly, the Trustee sought a determination of the tax liability, if any, that would be borne upon the Estate at the sale of the Property.

The IRS objected to the Trustee's motion on the ground that the bankruptcy court did not have jurisdiction to decide the tax issue. First, the IRS argued that until the Property was actually sold, no case or controversy existed. Second, the IRS alleged that the Trustee was not seeking a determination of a tax liability, but rather an advisory opinion on the issue. Third, on alternative grounds, the IRS argued that even if the bankruptcy court did have jurisdiction, the Trustee would not be entitled to exclude any capital gain from a sale of the residence under § 121. In other words, the IRS (not the creditors) would be entitled to the capital gains tax upon the sale of the Property by the Trustee in a Chapter 7 liquidation. Remarkably, Popa agrees that the IRS is entitled to the taxes on capital gains. Of course, if the Estate were liable for capital

3.   11 U.S.C. § 505(a)(1) provides as follows:
Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

gains taxes, then there would be no equity in the Estate and, under § 554(b), the Trustee would be forced to abandon the Property. In this scenario, Popa could conceivably retain the property.

On March 10, 1998, the bankruptcy court ruled on Popa's § 554(b) motion to compel the Trustee to abandon the Property. *Popa*, 218 B.R. 420. The bankruptcy court first held that the Spouse was not entitled to the homestead exemption under the Homestead Act. *Id.* at 423. In light of this finding, the bankruptcy court held that the Trustee could sell the Property without the Estate incurring any capital gains tax liability under § 121, i.e., there was sufficient equity in the Property to defeat Popa's § 554(b) claim. *Id.* at 428.

The matter is now before this court from appeals by Popa and the United States. Popa appeals the bankruptcy court's decision denying his Spouse the homestead exemption. The United States appeals the bankruptcy court's decision that it had jurisdiction to hear the tax issue and that the Trustee could claim, on behalf of the Estate, the capital gains tax exclusion under § 121. For the reasons that follow, the bankruptcy court's decision is AFFIRMED.

## JURISDICTION

■ United States District Courts have jurisdiction over appeals from final judgments and final orders in bankruptcy courts pursuant to 28 U.S.C. § 158(a). On an appeal from the bankruptcy court, the district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. In reviewing the decision of a bankruptcy court, the district court is constrained to accept the bankruptcy court's findings of fact unless clearly erroneous. *Matter of Salzer*, 52 F.3d 708, 711 (7th Cir.1995); *Matter of Excalibur Auto. Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir.1988). However, there is no presumption of correctness as to the bankruptcy court's con-

clusions of law and, accordingly, this court reviews the issues of law in this case *de novo*. *Id.*; *Excalibur Auto. Corp.*, 859 F.2d at 458.

## DISCUSSION

This appeal stems from three issues: (1) does the Homestead Act exemption apply to a non-title holding spouse; (2) does the bankruptcy court have jurisdiction to determine whether the Trustee is entitled to exercise a capital gains tax exclusion under § 121; and, if so, (3) is the Trustee entitled to claim, on behalf of the Estate, the capital gains tax exclusion otherwise available to a debtor under § 121. The court will address each issue in turn.

## I. Homestead Exemption

■ The question of whether a spouse with no ownership interest in property is entitled to a homestead exemption is unsettled in Illinois. *See Matter of Reuter*, 56 B.R. 39 (Bankr.N.D.Ill.1985) (spouse with no ownership interest may be entitled to homestead exemption); *In re Owen*, 74 B.R. 697 (Bankr.C.D.Ill.1987)(spouse with no ownership interest is not entitled to homestead exemption); *In re Hartman*, 211 B.R. 899 (Bankr.C.D.Ill.1997)(same). Judge Barliant found that a spouse who is not in title to real property is not eligible for a homestead exemption under the Homestead Act. *Popa*, 218 B.R. at 423. Whether the bankruptcy court properly applied the Illinois Homestead Act in the context of a bankruptcy appeal is a question of law. Accordingly, the court reviews this matter *de novo*.

■ The initial claim in this appeal is whether the bankruptcy court erred in determining that the Homestead Act precludes a spouse from taking a homestead exemption where she holds no title to the real property at issue. The Homestead Act provides, in relevant part, that:

[e]very individual is entitled to an estate of homestead to the extent in value of $7,500, in the farm or lot of land and

buildings thereon, a condominium or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence ... and such homestead, and all right and title therein, is exempt from attachment, levy or judgment sale for the payment of his or her debts or other purposes.

In reaching the decision that "a spouse who is not in title to real property is not eligible for a homestead exemption," the bankruptcy court considered the unsettled issue and the representative cases of *Reuter*, 56 B.R. 39, *Hartman*, 211 B.R. 899, and *Owen*, 74 B.R. 697. After a careful review of the parties' memoranda, the respective case law, and Judge Barliant's Order, this court is convinced that Judge Barliant's ruling is sound.

The central contention set forth by Popa is that under *Reuter*, 56 B.R. at 42, a spouse of a titled-owner of the marital residence is entitled to claim a homestead exemption. In *Reuter*, the spouse of a title-holder sought a homestead exemption in the property even though the spouse held no ownership interest in the property. *Id.* at 40. The *Reuter* court determined that the spouse, Mr. Reuter, was entitled to such a homestead exemption because, in part, Mr. Reuter had a "right to occupy the homestead by" virtue of his marriage to his title-owner wife, and that "[f]or the duration of their marriage, Mr. Reuter ha[d] a non-vested future interest in the residence. If Mrs. Reuter were to predecease him and die intestate while they were still married, he would have an interest in one third of her estate, including the Property." *Id.* at 41.

Additionally, the *Reuter* court explained that "The Illinois Homestead exemption provision when read in conjunction with the Rights of Married Women Act (Ill.Rev. Stat. ch. 40, § 1016) and the Release of Homestead Act (Ill.Rev.Stat. ch. 30, § 26), provides a spouse the right to claim an exemption for the marital home without having legal title." *Id.* The Rights of Married Women Act provides, in relevant part,

that "[n]either the husband nor wife can remove the other or their children from their homestead without the consent of the other, unless the owner of the property shall, in good faith, provide another homestead suitable to the condition in life of the family; ...." The *Reuter* court noted that a spouse, "by his or her marriage and residence in a homestead, acquires a right to occupy the homestead. The other spouse is unable to unilaterally alienate that right." *Id.* (citations omitted).

The *Reuter* court then cited the Release of Homestead Act, which sets forth, in part, as follows:

no deed or other instrument shall be construed as releasing or waiving the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right. And no release or waiver of the right of homestead by the husband or wife shall bind the other spouse unless such other spouse joins in such release or waiver.

The *Reuter* court concluded that "[i]t is clear [that] for the duration of Mr. and Mrs. Reuter's marriage, Mrs. Reuter would be unable to sell the house without complying with the quoted provisions of the Rights of Married Women Act and the Release of Homestead Act. Therefore, Mr. Reuter has a homestead right in this marital residence without any title to the Property." *Id.*

Although the *Reuter* court determined that Mr. Reuter was entitled to the homestead exemption on the basis of his marriage to his title-owner wife, his future interests in the property, and the conjunctive reading of the Rights of Married Women Act and the Release of Homestead Act, this ruling is contrary to the two later decisions of *Hartman*, 211 B.R. 899 and *Owen*, 74 B.R. 697. As Judge Barliant did, this court will review these cases.

In *Hartman*, the court discussed and dismissed the *Reuter* court's reliance upon "the Rights of Married Women Act and the Release of Homestead Act as provid-

ing the basis for a nontitled spouse to claim an interest protected by the Homestead Act." *Hartman,* 211 B.R. at 904. The Rights of Married Women Act, according to the *Hartman* court, "does not create an absolute right in a particular piece of property. A spouse can defeat a claim of homestead in an existing piece of property if another homestead is provided." *Id.*

In dismissing the Release of Homestead Act as a viable ground upon which to reach the asserted conclusion, the *Hartman* court found that contrary to the *Reuter* court's findings, that Act "does not create a right of homestead. It merely provides that if it exists, one spouse cannot release it for the other spouse. These statutory provisions are intended to limit the rights as between spouses and not to improve the rights of a nontitled spouse vis-a-vis third party creditors." *Id.* The *Hartman* court concluded that *Reuter* was decided "by improperly relying on outdated authority and misconstruing the effect of several state statutes." [4] *Id.* at 903.

The *Hartman* court relied instead on the holding of *Owen.* In *Owen,* a husband sought a homestead exemption in property that was solely owned by his wife. *Owen,* 74 B.R. at 697. The husband argued that his joint occupation of the property was sufficient to entitle him to the exemption. *Id.* at 698. The *Owen* court held that "the number of exemptions available [under the Homestead Act] is to be determined by the number of individuals in title who qualify for the homestead estate...." *Hartman,* 211 B.R. at 902–03 (quoting *Owen,* 74 B.R. at 700). Finding that the husband was not "in title" to the estate, the *Owen* court rejected the husband's argument. *Id.*

In reaching its conclusion, the *Owen* court analyzed *Jones v. Kilfether,* 12 Ill.

App.2d 390, 139 N.E.2d 801 (1956) and *Sterling Savings & Loan Association v. Schultz,* 71 Ill.App.2d 94, 218 N.E.2d 53 (1966):

In *Jones v. Kilfether,* ... a husband who lived with his wife claimed a homestead right in premises owned by his wife and her brother as tenants in common, based upon his mere occupancy of the premises. The [*Kilfether* ] court held:

[S]ince, under the rule heretofore enunciated, the right of homestead can have no separate existence independently of the title which constitutes one of its essential elements and from which it is inseparable, he has no right of homestead.... *Id.* at 396–397, 139 N.E.2d 801.

Similarly, in *Sterling Savings,* the court stated:

The right of homestead being by our present statute enlarged into an estate, it follows that like all other estates, it can have no separate existence apart from the title on which it depends. We have held that the estate of homestead created by the statute is based upon the title of the householder, and can have no separate existence independently of the title, which constitutes one of its essential elements, and from which it is inseparable. *Sterling Savings* 71 Ill.App.2d at 112, 218 N.E.2d 53 (citing *De Martini v. De Martini,* 385 Ill. 128, 52 N.E.2d 138 (1943)).

The *Owen* court concluded that "[s]ince Roger Owen had no title, he ha[d] no homestead under the Illinois exemption statute." *Id.*

For further support that an untitled spouse has no homestead rights under the Homestead Act, this court, like the *Hart-*

4. The *Reuter* court relied, in part, on *Rendleman v. Rendleman,* 118 Ill. 257, 264, 8 N.E. 773, 776 (1886) to reach the result that Mr. Reuter was entitled to a homestead exemption. The *Hartman* court, however, explained that the "difficulty with relying on *Rendleman* is that it is a case decided over 100 years ago

interpreting a homestead statute which has subsequently been amended and the result is based on the right of dower in a deserted spouse, which right of dower has subsequently been abolished in the State of Illinois." *Hartman,* 211 B.R. at 903.

*man* court, turns to the Illinois Legislature, where, in 1994, the Homestead Act was amended to include the following sentence: "If 2 or more individuals *own* property that is exempt as a homestead, the value of the exemption of each individual may not exceed his or her proportionate share of $15,000 based upon percentage of ownership." *Hartman*, at 905 (*emphasis added*). The plain language here implies that ownership is a prerequisite to the homestead exemption, and such exemption may only be made in proportion to the ownership interest.

Further still, the *Hartman* court cited the following "scant legislative history" on point:

Hoffman:  ... In addition, [House Bill 282] has a provision which has been put forward by the Community Bankers Organization regarding homestead exemption and clarifying language, clarifying it that we have only 75 ... or that ... clarifying that there is a limit of $15,000 for the homestead exemption regardless of the number of owners within the house. That is a clarification made necessary because of a recent court decision....

Hoffman:  "The provisions specifically provides that if two or more persons own property that is exempt as a homestead, the value of each personal exemption may not exceed his or her proportionate share of $15,000 based on the percentage of ownership. For instance, you and your wife own, with regard to the homestead exemption, own property, you would go in and sign up for $7,500 apiece. If you, your wife and your wife's sister lived with you and [ ] was ownership, you couldn't get $7,500 apiece. You would get $15,000 total. That's the intent of the original law but what has happened is, is there were some ... there was a court case, a recent court case, that specifically said that they ... that it was believed that the Legislature had to clear that provision up. So what it says, is that's $15,000 per household."

Wennlund:  "Does this in any way reduce the amount of the homestead exemption that has existed prior to this date?"

Hoffman: "No, not at all."

88th Ill. Gen. Assem., House Proceedings (November 30, 1994).

The *Hartman* court concluded that:

[b]oth the amendment, adopted after all the cited judicial decisions, and the legislative history indicate ownership is a requirement to claim a homestead exemption. To hold to the contrary would lead to another interpretation problem with an absurd result. The 1994 valuation amendment added to § 12–901 of the Civil Code of Procedure is based on ownership. If two or more individuals have an ownership interest the amendment would apply. If only one has an ownership interest, it would not. There is nothing in the legislative history to indicate, nor can this Court think of any reason that, the Illinois legislature intended such a result.

Here, the court agrees with Judge Barliant's reasoning that the *Owen* and *Hartman* cases portray the more sound analysis of § 901 as to whether the spouse of a titled-owner may properly seek an exemption. Accordingly, after considering the parties' respective arguments, and the record as a whole, this court affirms Judge Barliant's decision that Popa's Spouse was not entitled to a $7,500 homestead exemption. Therefore, based on a *de novo* re-

view of this matter, the court AFFIRMS the bankruptcy court on this point.

## II. 26 U.S.C. § 121: Applicability of the Capital Gains Tax Exemption to Trustee

The next issue stems from the bankruptcy court's determination that the Estate may take advantage of the capital gains tax exclusion provided by 26 U.S.C. § 121, as amended by the Taxpayer Relief Act of 1997, Pub.L.No. 105–34, § 312(a), 111 Stat. 836–37 (Aug. 5, 1997). As a preliminary matter, the IRS contends that the bankruptcy court did not have proper jurisdiction over this capital gains tax issue to make such a determination. The IRS argues that the bankruptcy court merely rendered an impermissible advisory opinion. *See United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947)(Article III Federal courts do not render advisory opinions). Therefore, the court shall first address whether the bankruptcy court had proper jurisdiction to determine the availability of the § 121 capital gains tax exclusion under Article III of the United States Constitution and 11 U.S.C. § 505(a).

### A. Jurisdiction

#### i. Article III jurisdiction

■ The jurisdiction of federal courts established under Article III of the Constitution is limited to actual cases and controversies. *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir.1984)(citing *Poe v. Ullman*, 367 U.S. 497, 502, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961)). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Id.* (citing *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). Thus, the question is simplified to "whether [1] there is a substantial controversy, [2] between parties having adverse legal interests, [3]

of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308). *See also Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945).

■ In applying the *Wisconsin's Environmental* test, the bankruptcy court found that all three parts were satisfied. *Popa*, 218 B.R. at 424. Whether the bankruptcy court properly applied the test in the context of a bankruptcy appeal is a question of law. Accordingly, the court reviews this matter *de novo*.

■ First, the bankruptcy court found that there was a "substantial controversy" as to the amount of equity in the Property. *Id.* Popa contended that there was no equity in the Property. *Id.* The Trustee averred that there was equity in the Property. *Id.* Again, if no equity existed in the property, or, rather, the property was of "inconsequential value and benefit to the Estate," the Trustee would abandon the property under § 554(b), and Popa would likely retain his ownership interest in the Property. Accordingly, the bankruptcy court found that a sufficiently substantial controversy existed to satisfy the first prong of the *Wisconsin's Environmental* test.

Second, the bankruptcy court found that this substantial controversy existed between parties with "adverse legal interests." *Id.* The IRS and Popa agree that the § 121 exclusion should not be available to the Trustee. Certainly, the IRS wants to ensure that the maximum amount of taxes are paid upon the sale of the Property. And by channeling any capital gains on the sale of the property to the government in the form of taxes, Popa wants to show that there is no equity in the Property so that he may retain it. *Id.*

The Trustee, on the other hand, wants to maximize the equity in order to make some valuable distribution to the creditors. *Id.* In order to make such a distribution,

the Trustee seeks to protect the Estate's capital gains from any government demand for taxes thereon. In light of these positions, the bankruptcy court found that the parties presented adequately adverse legal interests to satisfy the second prong of the *Wisconsin's Environmental* test.

Finally, with respect to the third prong, the bankruptcy court concluded that the controversy was of sufficient immediacy to warrant its issuing of a declaratory judgment on the availability of the § 121 exclusion. *Id.* at 424. The bankruptcy court reasoned that: "[i]t is only by making this determination that this Court can decide if the property is 'burdensome' or 'of inconsequential value' to the estate and thus the ultimate issue of abandonment under § 554." *Id.* Moreover, the bankruptcy court ascertained that since it already concluded that the Spouse could not claim a homestead exemption, "the issue of the amount of tax due upon a sale [of the Property] became outcome determinative to [Popa's § 554(b)] motion: if no tax would be due then there is equity in the Property and the Court must deny [Popa's § 554(b)] motion; if, on the other hand, taxes would be due, there is no equity and this Court would order the trustee to abandon the property." *Id.* at 424 n. 8.

### ii. Section 505(a) jurisdiction

The bankruptcy court also considered the jurisdictional issue under § 505(a). Section 505(a) generally sets the limits to a bankruptcy court's jurisdiction with respect to tax liability issues. Section 505(a), in relevant part, directs:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal or competent jurisdiction.

The purpose of § 505(a) has been defined in this district as follows: Section 505(a) gives bankruptcy courts jurisdiction to determine tax liability by providing a "forum for ready determination of the legality or amount of tax claims in order to expedite that decision and avoid the delay of the conclusion of administration of bankruptcy estates if left to another forum." *In re Schmidt,* 205 B.R. 394, 399 (Bankr. N.D.Ill.1997).

With respect to the language of § 505(a), the IRS contended that the Trustee sought not a determination of tax liability, but a determination of entitlement to the § 121 exclusion. The Trustee responded that the determination of the applicability of the § 121 exclusion is necessary to determine the tax consequences of a property sale. Considering the arguments, the bankruptcy court dismissed the IRS' contention and noted that "[t]he issue of whether the Trustee is entitled to use the § 121 IRC exclusion determined whether the estate's tax liability is zero or taxed at the applicable capital gain rate." *Id.* at 425. This court agrees.

Popa's motion for abandonment under § 554(b) is certainly central to the distribution of Popa's bankruptcy Estate. In fact, the Property is the only asset of the Estate. It follows that whether to grant or deny the Motion to Compel Abandonment under § 554(b) will determine whether Popa's unsecured creditors will receive any distribution at all.

Upon review of the parties' arguments and the record as a whole, the court agrees with the bankruptcy court's finding that jurisdiction is proper under Article III of the Constitution and § 505(a) to determine whether the Trustee can, on behalf of the Estate, apply the § 121 capital gains tax exclusion. *Popa,* 218 B.R. at 425. Such issues, in this context, are equally "ripe" for decision in this matter. Finding that proper jurisdiction exists, the court turns to the substantive issue of whether the § 121 exclusion may be properly exercised by the Trustee.

## B. Availability of § 121 Exclusion to the Trustee

Neither party disputes that a bankruptcy estate would be liable for any tax due upon the sale of the estate. Section 121, however, allows a taxpayer who has owned and lived at the residence for two of the preceding five years to exclude up to $250,000 of capital gain upon the sale of the residence.[5] *See Id.* It is uncontested that Popa, himself, would qualify for the § 121 exemption. The question here, though, is whether the Trustee (or bankruptcy estate), like Popa, is entitled to such a capital gain tax exclusion under § 121.

Whether the Trustee may claim an exemption under § 121 is inexorably linked to another important and relevant section of the IRC in 26 U.S.C. § 1398. Section 1398 provides the guidelines for the taxation of a Chapter 7 estate, in relevant part, as follows:

(c) Except as otherwise provided by this section, the taxable income of the [bankruptcy] estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee. * * *

(f)(1) A transfer (other than by the sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be with respect to such asset. * * *

(g) Estate succeeds to tax attributes of debtor.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

* * *

(6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

I.R.C. § 1398 (1994 & Supp.1997). Considering the effect of § 1398 upon the Estate, the bankruptcy court found that the Estate may exercise the same capital gains tax exclusion as the debtor, Popa.

In reaching its finding, the bankruptcy court reasoned that § 1398(g)(6) provides that the estate succeeds to the debtor's "holding period." *Popa,* 218 B.R. at 426. If the debtor has owned the property for the requisite number of years as set forth in § 121 (two of the past five years), the estate succeeds to that holding period. *Id.* Next, the bankruptcy court reasoned that § 1398(g)(6) provides that the estate succeeds to the "character" of the asset "it had in the hands of the debtor." *Id.* The bankruptcy court observed that "character" is not defined by § 1398, but that the characteristics of the Property relevant to the tax code include its use as a principle residence for at least two of the past five years. *Id.* Therefore, these attributes constitute the "character it had in the hands of the debtor." Moreover, the bankruptcy court determined that because the "Estate succeeds to [the] tax attributes of the debtor," the Estate effectively stands in the same shoes as the debtor for purposes of § 121 tax exemption. *Id.* (quoting 26 U.S.C. § 1398(g)).

The bankruptcy court also found that this conclusion is compelled by §§ 1398(c)(1) and (f)(1) when read in conjunction with subsection (g)(6). *Id.* Section 1398(c)(1) states that an estate is taxed like an individual. *Id.* Section

---

**5.** Section 121 provides, in relevant part, as follows:

(a) Exclusion.-Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending

on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for period aggregating 2 years or more.

1398(f)(1) states that the transfer of property from the debtor to the estate is not a disposition for tax purposes, and "the estate shall be treated as the debtor would be with respect to such asset." *Popa*, 218 B.R. at 427. When these provisions are read with (g)(6), which provides that "[i]n the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor," the bankruptcy court determined that the estate is liable for the same tax, and entitled to the same exclusion, as would the debtor.

■ The bankruptcy court illustrated the policy reasons for allowing an estate to take advantage of the § 121 exclusion. *Id.* at 427–28. Judge Barliant reasoned that a taxpayer could:

> file a bankruptcy petition before unsecured creditors got judgment liens, discharge the debts, require the trustee to abandon the house because of the tax liability without the exclusion, sell the house with no liability owed to the discharged creditors, use the exclusion, and pocket the tax free proceeds. That result would neither 'mirror bankruptcy entitlements' nor make 'tax consideration as neutral as possible.'

Whether the bankruptcy court properly interpreted § 1398 and § 121 is a question of law. Therefore, the court reviews this question *de novo*.

■ Case law addressing § 121 was, for all practical purposes, recently amended under the Taxpayer Relief Act of 1997. Prior to the Taxpayer Relief Act of 1997, § 121 provided that:

> At the election of the tax payer, gross income does not include gain from the sale or exchange of property if the taxpayer has attained the age of 55 before the date of such sale or exchange, and during the 5 year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for

> period aggregating 3 years or more. . . . The amount of the gain excluded from gross income under subsection . . . shall not exceed $125,000 [and this exclusion may only be taken once].

This court will first consider the two significant cases pre-dating the Taxpayer relief Act of 1997—*In re Mehr*, 153 B.R. 430 (Bankr.D.N.J.1993) and *In re Barden*, 205 B.R. 451 (Bankr.E.D.N.Y.1996). Thereafter, the court will consider the relevant affect that the Taxpayer relief Act of 1997 had upon § 121, and apply this amended statute to the issue *sub judice*.

### i. Pre–Taxpayer Relief Act of 1997

In *Mehr*, both of the debtors were over the age of fifty-five and had used the premises as their personal residence for a regular and continuous period in excess of five years. *Mehr*, 153 B.R. at 431. The *Mehr* trustee sold the personal residence and filed a motion to determine the administrative tax liability. The *Mehr* trustee effectively sought the court's approval to use the one-time § 121 capital gains tax exclusion. *Id.* The *Mehr* court found that the trustee could not meet the requirements of the former § 121 exclusion because the Trustee (or bankruptcy estate) was not a taxpayer at least 55 years old and with a principal residence within the plain meaning of § 121. *Id.* at 433–434.

Next, the *Mehr* court analyzed § 1398 and its relevance to § 121. *Id.* at 435–39. The *Mehr* court agreed that the bankruptcy estate is to be treated as an individual for tax purposes. *Id.* at 435. However, the trustee, unlike the debtor, was not a "taxpayer" within the meaning of § 1398, and consequently, the trustee could not seek a § 121 exclusion. *Id.* at 432–39. The *Mehr* court reasoned that § 1398(c)(1) does not specifically provide for the use of any exclusions by the estate or otherwise. *Id.* at 435–36. Therefore, the *Mehr* estate was not entitled to the former § 121 exclusion. *Id.* at 439.

In *Barden*, another case predating the amended § 121, the Chapter 7 trustee

moved to use the one-time capital gains tax exclusion on the sale of the residence. 205 B.R. at 457. The *Barden* court followed the *Mehr* decision and held that the former § 121 was not available to a trustee. *Id.* The *Barden* court explained that when interpreting tax law, the court should adhere to the principle that "exemptions from taxation are to be construed narrowly." *Id.* at 454 (citing *Bingler v. Johnson,* 394 U.S. 741, 752, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969)). "Moreover," explained the *Barden* court, "we cannot be unmindful of the rule of construction that Congress permits exclusions only as a matter of grace, and the exclusions sections are to be strictly construed against the taxpayer." *Id.* at 455 (quoting *Estate of Levine,* 526 F.2d 717, 721 (2nd Cir.1975)). Thus, the *Barden* court held that § 1398 does not entitle the bankruptcy estate to succeed to a qualified debtor's capital gain exclusion under the former § 121 absent supporting statutory language therein. *Id.* at 457.

### ii. Post–Taxpayer Relief Act of 1997

As this court considers the merits of the IRS' position, it is struck by the direct legislative changes to § 121 in the Taxpayer Relief Act of 1997 ("the Act"), changes that were embraced by the bankruptcy court and its continuing progeny. *See In re DiDario,* 232 B.R. 311 (Bankr.D.N.J. 1999); *In re Kerr,* 237 B.R. 488 (W.D.Wash.1999); *In re Godwin,* 230 B.R. 341 (Bankr.S.D.Ohio February 4, 1999); *In re Munster,* 226 B.R. 632 (Bankr.E.D.Mo. 1998); *In re Bradley,* 222 B.R. 313 (Bankr. M.D.Tenn.1998). *But see In re Winch,* 226 B.R. 591 (Bankr.S.D.Ohio 1998). The Act broadened the availability of the exclusion in § 121 providing that:

> Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principle residence for [a] period aggregating 2 years or more. In general, the amount of gain excluded ... with respect to any sale or exchange shall not exceed $250,000.... [This section] shall not apply to any sale or exchange by the taxpayer if, during the 2–year period ending on the date of such sale or exchange, there was any other sale or exchange by the taxpayer to which [this section] applied. 26 U.S.C. § 121.

The numerous amendments to the Act effectively eliminated the age requirement, permitted the exclusion to be used multiple times, increased the amount of the exclusion, reduced the residential use period to two years, and made the exclusion automatic.

The first court to address the issue following *Popa* was *Munster,* 226 B.R. at 632. The *Munster* court considered whether a Chapter 7 trustee could utilize the § 121 exclusion and thereby avoid paying capital gains tax on the net sale proceeds of debtor's home. *Id.* The court in *Munster* considered the decisions in *Mehr* and *Barden,* as well as *Popa. Id.* at 633. Following the line of reasoning of *Popa,* the *Munster* court held that the Act provided the Chapter 7 trustee the right to assert the § 121 tax exclusion. *Id.* at 634. In its ruling, the *Munster* court recognized that the amended § 121 does not require an election by the taxpayer, but rather the capital gains tax exclusion is automatic. *Id.* Furthermore, observed the *Munster* court, pursuant to § 1398(g), the trustee succeeds to the "character" of property as residential real property. *Id.*

The next court to address this issue was *Bradley,* 222 B.R. at 313. The *Bradley* court also carefully analyzed and distinguished the *Mehr* and *Barden* cases. *Id.* at 315–16. In so doing, the *Bradley* court considered the relevant sections of the Internal Revenue Code and the analysis of *Popa. Id.* In *Bradley,* 222 B.R. at 314–15, the court reasoned that:

> A plain reading of I.R.C. § 1398 entitles the Chapter 7 estate of an individual

debtor to exclude from gross income the gain of the sale of a residence if that gain would have been excluded were the taxpayer the debtor. Section 1398(c) states that 'taxable income of the estate shall be computed in the same manner as for an individual.' Taxable income 'means gross income minus the deductions allowed by this chapter.' I.R.C. § 63(a).

The *Bradley* court concluded that § 1398, as a whole and when read in conjunction with other sections of the Internal Revenue Code, supports the Chapter 7 trustee's eligibility to assert the § 121 exclusion. *Id.* In addition to reading § 121 in conjunction with § 1398, the *Bradley* court found that allowing a Chapter 7 trustee to utilize § 121 promotes the public interest in a responsible bankruptcy system. *Id.* at 317.

After *Bradley*, the bankruptcy court in *Winch,* 226 B.R. at 591 rejected *Popa, Bradley,* and *Munster,* following instead the course of *Mehr* and *Barden.* The *Winch* court found that the language of § 121 and § 1398 was not "plain," as the *Popa, Bradley,* and *Munster* courts had found. *Id.* at 593. Accordingly, the *Winch* court turned to assessing the underlying policies of the original § 121 and the amended § 121. *Id.* The *Winch* court concluded that the amended § 121 did not alter the policies inherent in the original § 121 that emphasized that the exclusion was available only once in a lifetime, and found that the "plain language" of the Internal Revenue Code did not support the application of the exclusion by a Chapter 7 trustee. *Id.* Therefore, the *Winch* court held that the individual taxpayer only, and not the bankruptcy estate, is eligible for the exclusion. *Id.* at 594.

While the *Winch* court appeared to cut against the *Popa* line of cases, at least in

the Southern District of Ohio, a later case in that same district proved that the reasoning of *Popa* and its progeny was not dead. In *Godwin,* 230 B.R. at 341, the court thoroughly analyzed the existing case law and held that the character of the asset itself, a character to which a trustee succeeds under § 1398(g)(6), allows the trustee to qualify for the § 121 exclusion. *Godwin* recognized that under the amended § 121, the taxpayer need not be 55 or older and can utilize the exclusion more than once. *Id.* at 345. The *Godwin* court noted that while the former § 121 required an affirmative election by the taxpayer, no such election was required by amended § 121. *Id.* at 346. The *Godwin* court persuasively illustrated that:

> [t]o hold otherwise would create additional tax liability due solely to a bankruptcy filing, and will dissuade bankruptcy trustees from selling non-exempt assets that would otherwise benefit the estate. This would, in effect provide Chapter 7 debtors with a hidden exemption outside of the state or federal exemption statutes, and a windfall to the detriment of the estate as a whole. *Id.*

The Seventh Circuit's decision in *In the Matter of Kochell,* 804 F.2d 84 (7th Cir. 1986) also supports the bankruptcy court's interpretation of § 1398(f)(1). In *Kochell,* 804 F.2d at 87, the bankruptcy trustee distributed funds from an Individual Retirement Account ("IRA") to creditors. In doing so, a penalty was assessed to the account pursuant to 26 U.S.C. § 408(f). *Id.* at 85. Section 408(f) imposed the penalty following a distribution to "the individual for whose benefit such account or annuity was established." *Id.* The trustee argued "So go tax Dr. Kochell. He is the 'individual', and if a distribution works to his benefit he should pay the tax. The bankruptcy estate is just the waystation between the IRA and the creditors."[6] *Id.*

---

6. The Seventh Circuit also noted that notwithstanding the *Kochell* trustee's argument, "the Trustee concedes that the estate must pay the income tax on the funds in the IRA, and there is no good reason why the income tax on the withdrawn funds is an obligation of the estate while the penalty tax on the same withdrawal lands on the debtor personally." *Kochell,* 804 F.2d at 85–86.

at 86. The *Kochell* court rejected this argument, holding that under § 1398(f)(1), when the debtor filed his petition in bankruptcy, the estate succeeded to the status of the debtor.[7] *Id.* at 87. Therefore, the estate was liable for the penalty. *Id.*

Reviewing this issue *de novo*, in light of the case law, the court finds that a plain reading of § 1398, and the reasoning of the *Popa* line of cases, shows that the Trustee is entitled to exercise, on behalf of the Estate, the capital gains tax exclusion set forth under § 121. Such a finding promotes the overall aim of the bankruptcy process—to give the debtor a "fresh start"—while maximizing the equitable distribution of the debtor's assets to creditors. *Matter of Chicago, Milwaukee, St. Paul & Pacific R Co.*, 974 F.2d 775, 788 (7th Cir.1992). Moreover, this decision avoids a windfall to debtors at the expense of creditors. *Id.* (citing Blum, *Full Priority and Full Compensation in Corporate Reorganizations: A Reappraisal*, 25 U.Chi.L.Rev. 417, 423 (1958)). The bankruptcy court correctly pointed out that if the Trustee is not entitled to use § 121, a debtor could walk away from the bankruptcy case with equity in his residence that is not attainable by his creditors. *Popa*, 218 B.R. at 427. In that connection, this interpretation also follows Congress' intention to make tax considerations as neutral as possible in determining whether a taxpayer should file a bankruptcy petition. *See Mehr*, 153 B.R. at 439. *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 274 (1977); U.S.Code Cong. & Admin. News 1978, pp. 5787, 6231.

After reviewing the parties arguments and the record as a whole, the court agrees with the bankruptcy court's finding that the Trustee can, on behalf of the Estate, apply the capital gains tax exclusion available to a debtor under § 121. Therefore, based on a *de novo* review of

this matter, the court AFFIRMS the bankruptcy court's Order.

## CONCLUSION

For the foregoing reasons, the bankruptcy court is AFFIRMED.

---

**7.** *See In re Kerr*, 237 B.R. 488 (W.D.Wash.1999)(Following the *Kochell* court's expression that "[b]ankruptcy ordinarily mirrors such non-bankruptcy entitlements; it is just a collective proceeding among creditors to apportion limited assets," *Kochell*, 804 F.2d at 85, the *Kerr* court noted that a debtor should be entitled to a § 121 exclusion since, under § 1398, the trustee is treated like the debtor).